FREDERICKA HOMBERG WICKER, Judge.
 

 DThis is a criminal proceeding in which the defendant/appellant Eddie Williams appeals his conviction and life sentence for aggravated rape of a juvenile. The defendant assigns four errors to the proceedings below. First, the defendant contends that the trial court erred in admitting “other crimes” evidence. Second, the defendant contends that the trial court erred in denying his Motion for New Trial. Third, the defendant contends that the trial court erred in admitting hearsay testimony of the victim’s sister. Finally, the defendant contends that the trial court erred in failing to inform the jury of the mandatory life sentence for aggravated rape. For the foregoing reasons, we affirm the defendant’s conviction and sentence. Further, we remand this matter to the trial court with instructions to inform the defendant in writing of his sex offender registration requirements and of his child predator registration requirements.
 

 
 *360
 
 PROCEDURAL HISTORY
 

 On October 13, 2005, the defendant was charged by grand jury indictment with one count of aggravated rape of a juvenile, a violation of La. R.S. 14:42. On March 16, 2006, the defendant filed several pretrial motions, including a Motion to Suppress Evidence, Identification, and Confession, a Motion and Order to Produce |,sPoIice Report, a Motion for Preliminary Examination, and a Motion for
 
 Brady
 
 and
 
 Giglio
 
 Material. On April 20, 2006, the defendant pleaded not guilty at arraignment.
 

 On May 20, 2008, the state filed a Notice of Intent to Introduce Evidence of Similar Crimes in Sex Offense Cases Pursuant to La.Code of Evidence Article 412.2 (the “Notice of Intent”). After a hearing, the trial judge allowed the admission of the evidence as requested by the state.
 

 A three-day trial was held in this matter, after which a jury found the defendant guilty as charged. The trial court sentenced defendant to life imprisonment without the benefit of parole, probation or suspension of sentence. This timely appeal follows.
 

 FACTS
 

 The Notice of Intent indicated that the “State intend[ed] to introduce” the testimony of two women who, while they were juveniles, had separate encounters with the defendant in 1993. One incident resulted in the defendant’s arrest and subsequent guilty plea for lewdness involving a child in the Third District Court of Utah. The second incident resulted in defendant’s arrest for sexual abuse of a child. The Notice of Intent further indicated that the state intended to use these incidents to demonstrate the defendant’s “lustful disposition towards children” pursuant to La. C.E. art. 412.2.
 

 On May 29, 2008, a hearing was held on the Notice to Intent.
 
 [1]
 
 The trial court allowed the prosecutor to testify in lieu of the victims over defense counsel’s objection. The prosecutor indicated that she obtained the defendant’s certified Utah conviction for lewdness involving a child. The prosecutor also indicated that |4she was able to obtain police reports from Utah authorities and locate the two women who were referred to in the Notice of Intent.
 

 One of the women referred to in the Notice of Intent was A.D., who was thirteen years old at the time of her encounter with the defendant.
 
 [2]
 
 The prosecutor testified that she spoke to A.D. After speaking to A.D., the prosecutor learned that a man had come to A.D.’s door in 1993 selling cleaning supplies and that he had asked to come inside to give her a demonstration. After A.D. acquiesced, the man told A.D. that she was pretty and that “he would lick her up” if she was his girlfriend. The defendant then stained the “crotch of [A.D.’s] shorts” and made “overt and verbal gestures” in an attempt to remove the stain near her genital area. Afterwards, A.D. became very upset, asked the defendant to leave the house, and told a friend what had transpired. A.D.’s friend contacted the police. No legal action was instituted against the defendant for the allegations raised by A.D.
 

 
 *361
 
 The second woman referred to in the Notice of Intent was G.P., who was twelve years old at the time of her encounter with the defendant. The prosecutor also spoke to G.P. G.P. and A.D. lived on the same street at the time of the incidents. According to G.P., the defendant knocked on her door, asked if she was alone, and told her that he wanted to help her clean a stain off the carpet. While G.P. was bending down, the defendant told her to turn around. He then placed his hands on her buttocks, marked G.P.’s crotch with a stain, put his hands up the inside of her shorts, and “rubbed her pubic and vaginal area with his hand.” G.P. ran away, locked herself in a bathroom, and ordered the defendant to leave her house. She then called a friend, who called the police.
 

 |5The prosecutor testified that both A.D. and G.P. subsequently identified the defendant, “as he was still remaining on that street when the police arrived.” At the conclusion of the hearing, the trial court ruled that the testimony of the witness was admissible pursuant to La. C.E. art. 412.2. Counsel for the defendant objected to the ruling.
 

 K.S., the victim, testified at trial that before Hurricane Katrina, she was living with her mother F.S. and the defendant. Her sister Ke. S. also lived nearby. According to K.S. the defendant “took down her pants” one day and started “licking” her and “biting” her on her “nu-nu” and her “butt.” K.S. indicated that her “nu-nu” is the “place where the pee-pee comes out.” K.S. denied seeing the defendant’s penis. K.S. additionally denied that the defendant ever rubbed his penis against her.
 

 K.S. testified that the defendant told her if she told her mother F.S. what had happened, he would kill F.S. K.S. indicated that she was scared of the defendant. After the first incident, the defendant “took down [KS.’s] pants” a second time. K.S. testified that the defendant “started doing the same stuff.” Shortly thereafter, K.S. indicated that F.S. found her “in the bed with [the defendant].” F.S. and K.S. went to Ke. S.’s home and called the police. On cross-examination, K.S. testified that the first person that she told what had happened was F.S., and that the second person that she told what had happened was Ke. S.
 

 F.S. testified that on July 8, 2005, she was living with the defendant and K.S. At approximately 4:30 in the morning, F.S. woke up and noticed that her apartment was completely dark, which she indicated was unusual because she usually kept the TV and a bathroom light on at night. She went to KS.’s room and turned on the light. According to F.S., K.S. was “half naked” and the defendant was “butt naked.” F.S. testified that she saw the defendant “licking” and “eating” | ñon KS.’s “bottom.” F.S. hit the defendant on the head with a nearby stick, wrapped K.S. in a sheet or towel, and left her apartment. K.S. and F.S. arrived at Ke. S.’s apartment and thereafter called the police. On cross-examination, F.S. admitted that she and the defendant fought and argued often and that she and the defendant had been consuming alcohol the night of July 7, 2005.
 

 Ke. S. testified that on the morning of July 8, 2005, she was living down the street from K.S. and F.S. At approximately 5:00 AM, F.S. started banging on Ke. S.’s door. Ke. S.’s fiancé opened the door and let K.S. and F.S. into Ke. S.’s house. K.S. was crying at the time. Ke. S. took K.S. upstairs. The trial court allowed Ke. S. to testify about the conversation she had with K.S., over the defendant’s objection. According to Ke. S., K.S. told her that the defendant “licked on her noonie and her bootie.” K.S. did not indicate that the
 
 *362
 
 defendant had licked her or bitten her on more than one occasion.
 

 Deputy Brian Brinser of the Jefferson Parish Sheriffs Office testified that he responded to F.S.’s call. At the time, F.S. was “very frantic, very angry.” According to Deputy Brinser, K.S. seemed “scared” and “confused.” Deputy Brinser was familiar with the defendant because he had dealt with him previously. Deputy Brin-ser located the defendant talking on a pay phone at a local Shell station. He identified himself and the defendant hung up the phone. Deputy Brinser then arrested the defendant and advised him of his rights.
 

 K.S. was taken to the Ambulatory Care Center at Children’s Hospital later that day, where a rape kit was collected. Dr. Scott Benton testified that Dr. Monica Weiner examined K.S. and took a history from her at Children’s Hospital. K.S. indicated to Dr. Weiner that the defendant “licked her in the booty and nu-nu.” Dr. Benton testified there was nothing found during the physical exam that invalidated the history K.S. gave to Dr. Weiner. Dr. Benton additionally testified that neither |7he nor Dr. Weiner collected evidence for the rape kit. Karen Bourne, a nurse at Children’s Hospital, testified that she collected evidence for the rape kit. The rape kit included samples of K.S.’s blood, saliva, and hair, as well as fingernail, navel, genital, and anal swabs.
 

 Gina Pineda testified for the state as an expert in the field of forensic science and DNA analysis, to which the defendant had no objection. Pineda testified that she prepared a report in conjunction with the instant case. Pineda additionally testified that male DNA was recovered from K.S.’s genitals and gluteal cleft. Pineda reviewed the DNA evidence that had been submitted with the rape kit. After reviewing the DNA, Pineda concluded that the defendant “[could not] be excluded as being a donor to the male DNA in the dried secretions and genital swabbing.”
 

 Omalee Gordon of the Gretna Police Department’s Child Advocacy Center testified that she interviewed K.S. approximately two weeks after the incident. The jury viewed the videotape of Gordon’s interview with K.S. During the interview, K.S. stated that defendant licked and bit her on her “bootie” and her “nu-nu.” Gordon asked K.S. where her “nu-nu” was. K.S. responded by pointing to her vaginal area.
 

 The final witness to testify was A.D., one of the women referred to in the Notice of Intent. A.D. testified that when she was thirteen, a man came to her door and told her that he was selling carpet cleaning products. She told the man that she was home alone. Eventually, A.D. took the man to her basement, where she recalled that there were stains on the carpet. The man squirted the stain on the carpet and told A.D. to put her foot on the stain. The man then told her to “put her hips into it,” then grabbed her hips and “moved them around.” Afterwards, the man “colored” on A.D.’s shirt and “put his hand underneath it and tried to scrub |sthat out.” According to A.D., the man told her that “if you were my girlfriend, I’d lick you up.” A.D. became uncomfortable and asked the man to leave. After the man left, A.D. rode her bicycle to her friend’s house. While she was riding home, A.D. noticed that the man was sitting at the top of her street in handcuffs.
 

 At trial, A.D. did not identify the defendant as the man who was selling cleaning products. A.D. was never specifically asked at trial whether the defendant was the man who had assaulted her fifteen years prior. The prosecutor asked A.D. if “the complexion of the person who was in your home, is it consistent with the person
 
 *363
 
 who sits here in the courtroom,” to which A.D. replied, “yes.”
 

 The defendant did not testify at trial. On June 18, 2008, the jury found the defendant guilty as charged. On June 25, 2008, the trial court sentenced the defendant to a term of imprisonment of life at hard labor without benefits. Immediately prior to sentencing, the defendant orally moved for a motion for new trial. The motion was denied by the trial court.
 

 SECOND ASSIGNMENT OF ERROR
 

 In the interests of economy and clarity, we will address the defendant’s second assignment of error first.
 

 In his second assignment of error, the defendant contends that the trial court erred in denying his motion for new trial. The defendant did not brief the merits of this assignment of error. The Louisiana Supreme Court has instructed the courts of appeal to consider an appeal of the denial of a motion for new trial as an appeal of the judgment on the merits when it is clear from the appellant’s brief that he intended to appeal the merits of the case.
 
 See, e.g., Shultz v. Shultz,
 
 2002-2534, p. 3 (La.App. 1 Cir. 11/7/03), 867 So.2d 745, 746-747 (quoting
 
 Carpenter v. Hannan,
 
 2001-0467, p. 4 (La.App. 1 Cir. 3/28/02), 818 So.2d 226, 228-229,
 
 writ denied,
 
 2002-1707 (La.10/25/02), 827 So.2d 1153). In the instant case, the arguments locontained in the defendant’s motion for new trial are the same as those made in his first and third assignments of error on appeal. Accordingly, we will consider the merits of the defendant’s first and third assignments of error below.
 

 FIRST ASSIGNMENT OF ERROR
 

 In his first assignment of error, the defendant claims that the trial court erred in allowing A.D.’s testimony. The defendant contends that the testimony given by A.D. was irrelevant, that the prejudicial effect of the evidence outweighed its probative value, and that the limiting instruction given by the trial court was improper. The state contends that A.D.’s testimony was admissible to show the defendant’s “lustful disposition towards children” pursuant to La. C.E. art. 412.2.
 

 Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. La. C.E. art. 401. All relevant evidence is admissible except as otherwise provided by positive law. Evidence which is not relevant is not admissible. La. C.E. art. 402. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay, or waste of time. La. C.E. art. 403.
 

 The fundamental rule in Louisiana governing the use of evidence of other crimes, wrongs, or acts is that such evidence is not admissible to prove that the accused committed the charged crime because he has committed other such crimes in the past.
 
 See State v. Hatcher,
 
 372 So.2d 1024, 1036 (La.1979) (Tate, J., concurring on rehearing).
 

 La. C.E. art. 404(B)(1) provides:
 

 Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other 1 mpurposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such
 
 *364
 
 evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
 

 The Louisiana Supreme Court first recognized a “lustful disposition” exception to the general rules of evidence in
 
 State v. Cupit,
 
 189 La. 509, 179 So. 837 (1938). In
 
 Cupit,
 
 the defendant was charged with assault with intent to commit rape of his niece. The state presented evidence the defendant had raped another niece and that the defendant had been charged with the rape of a third niece. The Supreme Court held the evidence was admissible because the “prior offenses ... clearly-tended to show the lustful disposition the defendant bore towards his nieces, and his unnatural desire to have sexual intercourse with them; all of his nieces being children of tender age.”
 
 Cupit,
 
 179 So. at 839 (emphasis supplied). In
 
 State v. Kennedy,
 
 00-1554 (La.4/3/01), 803 So.2d 916, the Louisiana Supreme Court held that absent a dispute as to whether the accused intended to commit the crime, evidence of other crimes was prohibited to show intent when the crime charged was a general intent crime.
 

 In 2001, the legislature enacted La. C.E. art. 412.2 in response to
 
 State v. McArthur,
 
 97-2918 (La.10/20/98), 719 So.2d 1037 and
 
 Kennedy, supra. See also State v. Williams,
 
 02-1030 (La.10/15/02), 830 So.2d 984, 986. La. C.E. art. 412.2(A) provides:
 

 When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused’s commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children may be admissible and may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in Article 403.
 

 (emphasis supplied)
 

 | nAccordingly, pursuant to La. C.E. art. 412.2(A), evidence of a prior sexual offense indicating that the defendant has a “lustful disposition toward children” is admissible if it is relevant and if the probative value of the evidence outweighs its prejudicial effect.
 
 State v. Olivieri,
 
 03-563 (La.App. 5 Cir. 10/28/03), 860 So.2d 207, 218. Rulings on the admissibility of evidence will not be disturbed, absent an abuse of discretion.
 
 Id.
 

 In the instant case, A.D. did not identify the defendant at trial as the man who ostensibly came to her home to sell cleaning supplies or who she saw in handcuffs at the top of her street.
 
 [3]
 
 A.D. only testified that the complexion of the man who came to her home was similar to the defendant’s complexion. The state never proved that the defendant was the person who came to A.D.’s home at trial. However, the prosecutor indicated at the hearing on the Notice of Intent that A.D. positively identified the defendant as the man that had come to her home. Thus, when the state called A.D. as a witness, the trial court had reason to believe that she would identify him in open court. A.D. did not do so. A.D.’s testimony was irrelevant because it did not tend to make the defendant’s alleged lustful disposition towards children more probable or less probable. Thus, at a minimum, the trial court should have stricken A.D.’s testimony from the
 
 *365
 
 record and instructed the jury to disregard it.
 

 The defendant also alleges that the trial court erred by failing to instruct the jury that no legal action was instituted against him for the allegations raised by A.D. Prior to A.D.’s testimony, the trial court instructed the jury as follows:
 

 Ladies and gentleman, listen to me carefully. Evidence that a defendant was involved in the commission of an offense other than the offense for which he is on trial is to be considered only for a limited purpose. The sole purpose for which such evidence may be considered is whether it tends to show 1^guilty knowledge, absence of mistake or accident, intent, system motive, identity, or to show a lustful disposition towards children. Remember, the accused is on trial only for the offense charged. You may not find him guilty of this offense merely because he may have committed another offense.
 

 The trial court gave a nearly identical limiting instruction to the jury before the jury began its deliberations.
 

 The record indicates that defense counsel did not make a contemporaneous objection to either instruction. A party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error. La. C. Cr. P. art. 801(C). The nature of the objection and grounds therefor shall be stated at the time of objection.
 
 Id.
 
 This Court has held that a defendant is required to make a timely objection under La. C. Cr. P. art. 801 in order to preserve a jury charge issue for review.
 
 See State v. Gardner,
 
 05-62 (La.App. 5 Cir. 6/28/05), 907 So.2d 793 (the defendants were precluded from raising issues pertaining to jury charges on appeal when the defendants failed to object to the charges given or the trial court’s failure to give a specific charge). Accordingly, we need not consider the defendant’s argument that the trial court erred by failing to instruct the jury that no legal action was instituted against him for the allegations raised by A.D.
 

 Even though A.D.’s testimony should have been stricken from the record, we need not reverse the defendant’s conviction. La. C. Cr. P. art. 921 provides “[a] judgment or ruling shall not be reversed by an appellate court because of any error, defect, irregularity, or variance which does not affect substantial rights of the accused.” The introduction of inadmissible other crimes evidence is subject to a harmless error analysis.
 
 State v. Girod,
 
 96-660 (La.App. 5 Cir. 11/25/97), 703 So.2d 771, 775-776 (quoting
 
 State v. Johnson,
 
 94-1379 (La.11/27/95), 664 So.2d 94, 101-102,
 
 reconsideration denied,
 
 94-1379 (La.4/8/96), 671 So.2d 332). An error is harmless when the verdict is “surely unattributable to the error.”
 
 State v. Williams,
 
 05-318, p. 4 (La.App. 5 Cir. 1/17/06), 921 So.2d 1033, 1036,
 
 writ denied,
 
 06-0973 (La.11/3/06), 940 So.2d 654.
 

 In this case, the jury’s verdict was surely unattributable to the alleged error. The state presented overwhelming evidence of guilt at trial without consideration of the defendant’s lustful disposition towards children. K.S. consistently testified that the defendant licked and bit her on her “butt” and her “nu-nu.” K.S. indicated that her “nu-nu” was her vaginal area. KS.’s testimony was corroborated by Dr. Benton and Omalee Gordon’s interview. Gina Pineda testified that male DNA, from which the defendant could not be excluded, was recovered from K.S.’s genitals and gluteal cleft. F.S. testified that when she walked into the defendant’s bedroom, K.S. was “half naked” and the defendant was “butt
 
 *366
 
 naked.” F.S. further testified that she saw the defendant “licking” and “eating” on K.S.’s “bottom.”
 

 Accordingly, this assignment of error has no merit.
 

 THIRD ASSIGNMENT OF ERROR
 

 In his third assignment of error, the defendant contends that the trial court erred in allowing the testimony of Ke. S. More specifically, the defendant contends that the trial court erred in allowing Ke. S. to testify with respect to the conversation she had with K.S. The defendant argues that this testimony was inadmissible hearsay. The state contends that the testimony was nonhearsay under La. C.E. art. 801(D)(1)(d).
 

 Hearsay is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. La. C.E. art. 801. As a general rule, hearsay is inadmissible at trial. La. C.E. art. 802.
 

 1 MLa. C.E. art. 801(D) provides:
 

 Statements which are not hearsay. A statement is not hearsay if:
 

 (1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is:
 

 (d) Consistent with the declarant’s testimony and is one of initial complaint of sexually assaultive behavior.
 

 (emphasis supplied)
 

 The comments to La. C.E. art. 801 emphasize that “[i]t is only the initial complaint by the victim, whether made to a family member, policeman, or other person, that is defined as non-hearsay under this provision. Subsequent complaints or reports about the same crime would not be admissible under it.” La. C.E. art. 801, cmt. The Louisiana Supreme Court has stressed that La. C.E. art. 801(D)(1)(d) “reflects a longstanding jurisprudential rule exempting the initial report of a child rape victim from the hearsay rule.”
 
 State v. Kennedy,
 
 05-1981 (La.5/22/07), 957 So.2d 757, 778,
 
 rev’d on other grounds,
 
 — U.S.-, 128 S.Ct. 2641, 171 L.Ed.2d 525 (2008).
 

 It is undisputed in the instant case that Ke. S. testified at trial and that she was subject to cross-examination. The state and the defendant dispute whether K.S. made the “initial complaint of sexually as-saultive behavior” to Ke. S. or F.S.
 

 At trial, K.S. testified that the first person that she first reported the incident to F.S., and that she thereafter reported the incident to Ke. S. K.S. repeated this claim during her interview with Omalee Gordon. Conversely, F.S. testified that K.S. did not report the incident to her while they were in transit to Ke. S.’s house. According to F.S., she did not question K.S. about what happened because her concern was getting to Ke. S.’s house and notifying the police.
 

 11KThe record indicates that counsel for the defendant objected several times to Ke. S.’s testimony. The first objection was made during Ke. S.’s testimony. The trial court overruled the objection. The second objection was made after K.S. testified that she first reported the incident to F.S. The trial judge again denied the objection, noting:
 

 I do pay particular note to the testimony of the adults as opposed to that of the child. And despite the testimony of [K.S.], in these cases, the very nature of the case, and because of the tender age, children tend to contradict themselves from time to time. It’s quite clear to the Court that in those seconds immediately following the incident [K.S.] was brought, hurriedly, over to [Ke. S.’s] house, the mother’s older daughter, and
 
 *367
 
 I think it is without question that [K.S.] had an opportunity in an upstairs area to talk one-on-one with [Ke. S.]. And I think in her testimony in court it’s quite apparent that she gave her sister many more details than what the mother was apprised.
 

 So, for those reasons, I think in the spirit of the law ... the sister was, in fact, the first reporter, and the slightest contradiction in the young lady’s testimony at an age of nine is not persuasive to the Court.
 

 So, I’ll note your objection. It’s denied. Thanks.
 

 The trial court therefore determined that Ke. S.’s testimony was more credible than that of K.S. This Court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.
 
 Perkins v. Entergy Corp.,
 
 00-1372 (La.3/23/01), 782 So.2d 606, 612, 613,
 
 reh’g denied,
 
 4/27/01 (quoting
 
 Canter v. Koehring,
 
 283 So.2d 716, 724 (La.1973))
 
 (,superseded by statute on other
 
 grounds). The reason for this well-settled principle of review is based not only upon the trial court’s better capacity to evaluate live witnesses (as compared with the appellate court’s access only to a cold record), but also upon the proper allocation of trial and appellate functions | ^between the respective courts. M
 
 [4]
 
 A court of appeal may not set aside a trial court’s finding of fact in the absence of manifest error or unless it is clearly wrong.
 
 Theriot v. Lasseigne,
 
 93-2661, (La.7/5/94), 640 So.2d 1305, 1310 (citing
 
 Sistler v. Liberty Mutual Ins. Co.,
 
 558 So.2d 1106 (La.1990)). In order to reverse a trial court’s determination of fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the factfinder is clearly wrong or manifestly erroneous.
 
 Stobart v. State, Through DOTD,
 
 617 So.2d 880, 882 (La.1993). After reviewing the record, we have concluded that there is a reasonable factual basis in the record for the trial court’s finding that Ke. S.’s testimony was more credible than that of K.S. We cannot say that the trial courts decision was manifestly erroneous.
 

 In addition, the Louisiana Supreme Court has long held that the admission of even hearsay testimony is harmless error where the effect is merely cumulative or corroborative of other testimony adduced at trial.
 
 State v. Johnson,
 
 389 So.2d 1302 (La.1980);
 
 State v. McIntyre,
 
 381 So.2d 408, 411 (La.1980),
 
 cert. denied,
 
 449 U.S. 871, 101 S.Ct. 209, 66 L.Ed.2d 90 (1980). In the instant case, Ke. S.’s testimony was cumulative. K.S. testified that the defendant licked and bit her on her “butt” and her “nu-nu.” The defendant’s conduct was corroborated by F.S, a firsthand witness. Moreover, DNA recovered from K.S. could not exclude the defendant.
 

 Accordingly, this assignment of error has no merit.
 

 FOURTH ASSIGNMENT OF ERROR
 

 | l7In his fourth assignment of error, the defendant contends that the trial court erred in failing to inform the jury of the mandatory life imprisonment sentence for
 
 *368
 
 an aggravated rape conviction during his instructions.
 

 La. C. Cr. P. art. 807 provides:
 

 The state and the defendant shall have the right before argument to submit to the court special written charges for the jury. Such charges may be received by the court in its discretion after argument has begun. The party submitting the charges shall furnish a copy of the charges to the other party when the charges are submitted to the court.
 

 A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given.
 

 “When the penalty imposed by the statute is a mandatory one the trial judge must inform the jury of the penalty on request of the defendant, and must permit the defense to argue the penalty to the jury.”
 
 State v. Washington,
 
 367 So.2d 4, 4 (La.1978) (emphasis supplied). In the instant case, there is no indication in the record that the defendant requested a special charge instructing the jury that the mandatory penalty for an aggravated rape condition is term of imprisonment at hard labor. Moreover, the defendant failed to object to the special jury charges at the time they were proposed and at the time they were given to the jury. Omissions in jury charges that the trial court was not requested to supply are not error.
 
 State v. Thames,
 
 95-2105 (La.App. 1 Cir. 9/27/96), 681 So.2d 480;
 
 State v. Harris,
 
 166 La. 759, 117 So. 820, 823 (1928),
 
 cert. denied,
 
 278 U.S. 641, 49 S.Ct. 34, 73 L.Ed. 556.
 

 Accordingly, this assignment of error has no merit.
 

 ERRORS PATENT
 

 The record was reviewed for errors patent, according to La. C. Cr. P. art. 920(2).
 
 See also State v. Oliveaux,
 
 312 So.2d 337 (La.1975);
 
 State v. Weiland,
 
 556 So.2d 175 (La.App. 5 Cir.1990). We discern two errors patent.
 

 11sFirst, we note that the trial court failed to notify the defendant of Louisiana’s sex offender registration or notification requirements pursuant to La. R.S. 15:540
 
 et seq.
 
 The legislature recently enacted extensive amendments to the sex offender and child predator registration statutes in 2007 La. Acts 460, § 2, which became effective on January 1, 2008. 2007 La. Acts 460, § 6 pertinently provides:
 

 The provisions of this Act shall apply to all persons convicted of a sex offense or a criminal offense against a victim who is a minor, as defined in R.S. 15:541, regardless of the date of conviction, with the exception of those persons required to register under previous provisions of law whose obligations to register] have been fulfilled and extinguished by operation of law.
 

 The offense for which the defendant was convicted is designated as a “sex offense” under La. R.S. 15:541(24). La. R.S. 15:542, as amended, outlines mandatory registration requirements for sex offenders and child predators. Additionally, La. R.S. 15:542.1, as amended, sets out notification requirements for offenders categorized as sex offenders and child predators.
 

 La. R.S. 15:543(A), as amended, states that the trial court “shall provide written notification to any person convicted of a sex offense and a criminal offense against a victim who is a minor of the registration requirements and the notification requirements of [La. R.S. 15:540
 
 et seq}.”
 
 In addition, La. R.S. 15:543(A) states that the trial court shall use the form contained in
 
 *369
 
 La. R.S. 15:543.1 to inform the defendant of the registration and notification requirements.
 
 [5]
 
 La. R.S. 15:543(A) further requires that such notice be included on any guilty plea forms and judgment and sentence forms provided to defendant, and that an entry be made in the court minutes stating that the written notification was provided.
 

 | iSHere, the record indicates that the trial court did not comply with La. R.S. 15:543(A). As a result, we are remanding this matter to the trial court for the purpose of providing the defendant with appropriate written notice of his sex offender notification and registration requirements.
 
 See, e.g., State v. Scott,
 
 42,997 (La.App. 2 Cir. 2/13/08), 975 So.2d 782. We instruct the trial court to inform the defendant of his notification and registration requirements by using the form contained in La. R.S. 15:543.1.
 

 The record additionally indicates that the defendant filed a Motion for New Trial in open court on June 25, 2008. The trial court promptly denied the Motion for New Trial and sentenced the defendant to a term of life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence that same day. Thus, the trial judge failed to observe the twenty-four hour delay required between the denial of a motion for new trial and the imposition of sentence pursuant to La. C. Cr. P. art. 873. However, no corrective action is required. Absent a showing that prejudice resulted from the failure to afford the statutory delay, reversal of a prematurely imposed sentence is not necessary.
 
 State v. Jackson,
 
 99-401 (La.App. 5 Cir. 10/13/99), 746 So.2d 698. In the present case, we find that the defendant was not prejudiced by the failure to observe the delay because the trial judge was required to impose a mandatory sentence of life imprisonment at hard labor on the defendant’s conviction of aggravated rape. Thus, the failure to delay sentencing in this case can be deemed harmless.
 
 See also State v. Patterson,
 
 05-560 (La.App. 5 Cir. 1/31/06), 922 So.2d 1195, 1204.
 

 CONCLUSION AND DECREE
 

 For the foregoing reasons, the defendant’s conviction and sentence are affirmed. This matter is remanded to the trial court for the purpose of providing the defendant with appropriate written notice of his sex offender notification and | ^registration requirements. The trial court is instructed to inform the defendant of his notification and registration requirements by using the form contained in La. R.S. 15:543.1.
 

 CONVICTION AND SENTENCE AFFIRMED; REMANDED WITH INSTRUCTIONS
 

 [1]
 

 . We note that the trial court was not required to conduct a pre-trial hearing prior to admitting evidence demonstrating the defendant’s "lustful disposition towards children” pursuant to La. C.E. art. 412.2.
 
 State v. Williams,
 
 02-1030, 02-0898, p. 6 (La. 10/15/02), 830 So.2d 984, 987.
 

 [2]
 

 . In accordance with La. R.S. 46:1844, the victims and their family members will be referred to by the use of initials in order to protect their identities.
 
 See also State v. Myles,
 
 04-677 (La.App. 5 Cir. 1/25/05), 894 So.2d 515, 528.
 

 [3]
 

 . At the hearing on the Notice of Intent, the prosecutor indicated that A.D. and G.P. had previously identified the defendant in 1993. However, the record indicates that A.D. did not identify the defendant at trial.
 

 [4]
 

 . Even if the trial court erred in admitting Ke.S.'s testimony, we note that at least one Louisiana circuit has allowed La. C.E. art. 802(D)(1)(d) testimony from a witness other than a “first responder.”
 
 See State v. Reed,
 
 1997-0812 (La.App. 1 Cir. 4/8/98), 712 So.2d 572 (allowing police officer to testify as a first responder even though juvenile victim had told two neighbors and two other police officers that she had been raped).
 

 [5]
 

 . The Louisiana legislature adopted La. R.S. 15:543.1 in 2007 La. Acts 460; the same bill wherein the legislature enacted extensive amendments to the sex offender and child predator registration and notification statutes. In 2008 La. Acts 816, § 1, the legislature made several amendments to La. R.S. 15:543.1 to reflect changes in the underlying registration requirements. 2009 La. Acts 205, § 2 repealed La. R.S. 15:543.1(14), which required the offender to "timely sign and return the periodic address verification form sent to them by the Louisiana Bureau of Criminal Identification and Information ... according to the instructions on the verification form." In the same act, the legislature repealed La. R.S. 15:542.1.6, which required the Louisiana Bureau of Criminal Identification and Information to send sexual offenders and child predators periodic address verification forms.