MARK JONES

VERSUS

STATE OF LOUISIANA

NO. 22-K-269

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPLICATION FOR SUPERVISORY REVIEW FROM THE
TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 20-3317, DIVISION "G"
HONORABLE E. ADRIAN ADAMS, JUDGE PRESIDING

July 06, 2022

**FREDERICKA HOMBERG WICKER**
**JUDGE**

Panel composed of Judges Susan M. Chehardy,
Fredericka Homberg Wicker, and Jude G. Gravois

**WRIT GRANTED IN PART; WRIT DENIED IN PART**
    **FHW**
    **SMC**
    **JGG**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Susan S. Buchholz
First Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/RELATOR,
MARK JONES
James A. Williams
Kathrine E. Ellis
Jared L. Shurman
Jeffrey Hufft

COUNSEL FOR DEFENDANT/RESPONDENT,
STATE OF LOUISIANA
Lindsay L. Truhe
Thomas J. Butler

**WICKER, J.,**

Relator-defendant, Mark Jones, seeks review of the trial court's granting of the State's "Notice of Intent to Introduce Evidence Under LA. C.E. Article 412.4 Or In The Alternative 404(B)." This writ application presents a *res nova* issue to determine whether the law allows evidence of prior acts of alleged domestic abuse against a spouse or family member to be admissible under La. C.E. art. 412.4 in a criminal proceeding involving the abuse or, in this case, the murder and attempted murder of a different household or family member. Upon considering the legislative history and the plain language of La. C.E. art. 412.4, we find that a plain reading of the statute broadly permits evidence of any prior domestic abuse against any family or household member to be admissible in connection with a separate criminal proceeding involving alleged domestic abuse of a different household member, subject to the balancing test provided in La. C.E. art. 403. Accordingly, for the reasons provided herein, we find that the trial judge did not abuse his discretion in finding admissible the prior alleged acts of domestic abuse—with the exception of one alleged prior act, which we find does not meet the definition of abusive behavior as defined in La. C.E. art. 412.4. As to the July 13, 2003 incident involving the removal of a residential water meter, we grant the writ and vacate the trial court's ruling as to that alleged prior act. In all other respects, the writ is denied.

## Factual and Procedural Background

On November 8, 2018, a Jefferson Parish grand jury returned an indictment charging defendant with the second degree murder of his stepson, Tyrell Washington Sr., in violation of La. R.S. 14:30.1 (count 1), and the attempted second degree murder of his step-grandson, Tyrell Washington Jr., in violation of La. R.S. 14:27 and 14:30.1 (count 2) relative to an incident alleged to have occurred on Father's Day, Sunday, June 21, 2020. The charges involve allegations that defendant engaged in a verbal altercation with his stepson over a parking dispute that escalated when defendant retreated into his residence, obtained a firearm, and discharged the weapon at his stepson, who subsequently died from his injuries, and stepgrandson, who was severely injured. Defendant pled not guilty at his arraignment.

On January 5, 2022, the State filed a "Notice of Intent to Introduce Evidence Under LA. C.E. Article 412.4 Or In The Alternative 404(B)." In its Notice, the State sought to introduce evidence at trial of various prior incidents of domestic abuse against his wife and stepdaughter, who was under the age of seventeen at the time of the occurrence, and argued that such evidence is admissible and "categorically relevant under La. C.E. art 412.4 to show the Defendant's pattern of abuse on family members/household members and to demonstrate that he is the primary aggressor, rebutting his claim that the evidence presented at trial will demonstrate that he was in imminent danger of death or great bodily harm such that it was necessary for him to kill Tyrell Washington Sr. and seriously injure Tyrell Washington Jr." In its Notice of Intent, the State sought to introduce evidence of the following alleged prior incidents:

(1) On June 19, 2004, Tracy Washington called the police to report that her boyfriend (defendant) approached her in an aggressive manner, started cursing at her and told her to leave the residence. When she stood up, defendant struck her in the facial area several times with a closed fist. The two struggled and she yelled for her daughter to call the police.

When police arrived, they observed a bruise to Ms. Washington's forehead and a small laceration to the inside of her lip. The defendant was located and was arrested for Simple Battery.

(2) On November 30, 2004, Ms. Washington called the police to report that she had let her ex-boyfriend (defendant) enter her residence to retrieve his belongings. Ms. Washington reported that she and defendant got into a verbal altercation and defendant punched her in the mouth with a closed fist, causing her to fall into and damage her TV and DVD player. Defendant then left the residence with Ms. Washington's purse.

(3) On December 31, 2004, Ms. Washington called the police to report that she and the defendant were involved in a verbal altercation. She reported that defendant went back into the house and started tearing up Christmas decorations and broke a middle window of the front door. Ms. Washington reported that she retreated to the bedroom where she alleged defendant grabbed her by the arm and shook her several times trying to hurt her. Defendant then grabbed her purse and fled the location.

(4) On December 4, 2005, Ms. Washington called the police to report that she and her husband (defendant) began arguing after she confronted him about staying out every weekend smoking crack. Defendant became enraged and struck her in the face with his fist and cut her on the left side of her face with an unknown object. Ms. Washington ran out of the bedroom and one of her children called 911. When the police arrived, they observed Ms. Washington bleeding from the left side of her face and a small puncture wound.

(5) On February 11, 2006, Ms. Washington called the police to report that after being gone for three days using narcotics, defendant returned home after running out of money, destroyed some ceramic figurines in the home, and grabbed her by the throat while she was laying in bed. She also reported that defendant pushed the TV off of the TV stand and dented the wall in the process. Defendant received a small superficial cut below his left chest and the police reported that the injury appeared consistent with being scratched by Ms. Washington-Jones' fingernails.

(6) On June 11, 2006, Ms. Washington called the police to report that defendant struck her in the face when she told him she was cooking dinner for family members who were coming over after church. When the police arrived, they observed Ms. Washington appear at the door with a bloody shirt and face and two visible contusions on her forehead above her left eye.

(7) On March 15, 2007, defendant called the police to report that he and one of the victims in the instant case, Tyrell Washington Sr., got into a fight because defendant called his 16-year-old stepdaughter a "whore and a bitch." Defendant reported that the victim in this case choked him and they wrestled. This incident was witnessed by defendant's stepdaughter, Bianca Washington, who is expected to testify that defendant was demanding that she wash the dishes and when she told him she would do so after she finished her homework, defendant began calling her names. When the officer was leaving the location, she heard yelling and screaming coming from the residence and observed defendant and Bianca

2

Washington shoving and yelling at each other. Both individuals were arrested for fighting.

(8) On April 26, 2008, Ms. Washington walked into the West Jefferson Emergency Room stating that defendant had punched her in the face. She explained that while she and defendant were at Brother's Discount Market she was explaining to him that she wanted to leave him due to the fact that he was addicted to crack cocaine. She reported that defendant became enraged and punched her on the left side of her face with a closed fist. When she got into her vehicle to leave, he smashed the driver's side window, causing it to shatter and the victim received minor injuries.

(9) On May 4, 2008, Ms. Washington called the police after a physical altercation with defendant. When the police arrived, they observed Ms. Washington crying and bleeding heavily from her nose and mouth. She was afraid to speak to deputies until defendant was removed from the residence. Once they were separated, Ms. Washington told the police what happened and that defendant threatened to "kick her f****ing ass" if she said anything to the police. He also instructed her to say her injuries were caused by the dog. Ms. Washington advised the police that she was afraid of defendant because he has threatened to kill her several times.

(10) On September 20, 2009, Ms. Washington called the police to report that she and defendant had been arguing about her daughter, Bianca Washington. When they arrived home, defendant forced the door open, damaging the door frame and shoved her into the kitchen door. He then grabbed her by the neck, but did not strangle her. Bianca Washington witnessed this incident and verified her mother's account of the events.

(11) On July 22, 2013, Ms. Washington called the police to report that defendant had pulled the water meter out of the residence.

(12) On July 17, 2016, Ms. Washington called the police to report that when she arrived home from a party, she and defendant engaged in a verbal altercation which turned physical when defendant struck her on the right side of her face. Ms. Washington admitted that she had been drinking. Defendant claimed that nothing happened.

(13) When Bianca Washington was fifteen to sixteen years old and residing at the house on North Clark Street with defendant, she and defendant got into a verbal altercation. The defendant was demanding Ms. Bianca wash the dishes stating, "Get up or I'll whip your ass!" Ms. Bianca attempted to exit the bedroom but the defendant blocked the doorway. Defendant then took off his belt and began swinging it at Ms. Bianc[a], who grabbed his belt from him and began to swing it back at him. Defendant then proceeded to choke Ms. Bianca with such pressure she thought she was going to die. Ms. Bianca began clawing at defendant's face until she ultimately broke free and ran outside.[1]

Defendant filed an opposition to the State's Notice of Intent, contending that the prior alleged domestic abuse incidents involving his wife and stepdaughter,

---

[1] In support of these allegations at this time, the State presented the affidavit of Melanie Villemarette, a victim witness coordinator with the Jefferson Parish District Attorney's Office.

who are not victims to the alleged crimes in this case, are irrelevant to the murder charge involving his stepson and stepgrandson. Further, defendant argued that the prior incidents, which allegedly occurred between 2004 and 2016, should be inadmissible because they are too remote in time from the 2020 alleged crimes at issue. Alternatively, defendant argued that, even if the prior alleged domestic abuse incidents are relevant, such evidence is highly prejudicial and would not be admissible pursuant to the balancing test under La. C.E. art. 403.

On April 18, 2022, the trial court conducted a hearing on the State's Notice of Intent and took the matter under advisement. On May 5, 2022, the trial court orally granted the State's Notice of Intent. This timely writ application followed.

## Law and Analysis

The fundamental rule in Louisiana governing the use of evidence of other crimes, wrongs, or acts is that such evidence is not admissible to prove that the accused committed the charged crime because the defendant has committed other such crimes in the past. *State v. Williams*, 09-48 (La. App. 5 Cir. 10/27/09), 28 So.3d 357, 363, *writ denied*, 09-2565 (La. 5/7/10), 34 So.3d 860; *see also* La. C.E. art. 404(B)(1); *State v. Ard*, 20-221 (La. App. 5 Cir. 4/28/21), --- So.3d ---, 2021 WL 1660916. A trial court's ruling on the admissibility of evidence is reviewed for an abuse of discretion. *State v. Kiger*, 13-69 (La. App. 5 Cir. 10/30/13), 128 So.3d 552, 557.

In 2016, the Louisiana legislature enacted La. C.E. art. 412.4 concerning other crimes evidence in domestic abuse and cruelty against juvenile cases, which provides in pertinent part:

> A. When an accused is charged with a crime involving abusive behavior against a family member, household member, or dating partner or with acts which constitute cruelty involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused's commission of another crime, wrong, or act involving assaultive behavior against a family member, household member, or dating partner or acts which constitute cruelty involving a victim who was under the age of seventeen at the time of the offense, may be admissible and may be considered for its bearing on any matter to which it is relevant, subject to the balancing test provided in Article 403.
>
> B. In a case in which the state intends to offer evidence under the provisions of this Article, the prosecution shall, upon request of the accused, provide reasonable notice in advance of trial of the nature of any such evidence it intends to introduce at trial for such purposes.
>
> C. This Article shall not be construed to limit the admissibility or consideration of evidence under any other rule.

La. C.E. art. 412.4.

The Article further defines terms used therein, as follows:

> D. For purposes of this Article:

4

(1) "Abusive behavior" means any behavior of the offender involving the use or threatened use of force against the person or property of a family member, household member, or dating partner of the alleged offender.

(2) "Dating partner" means any person who is involved or has been involved in a sexual or intimate relationship with the offender characterized by the expectation of affectionate involvement independent of financial considerations, regardless of whether the person presently lives or formerly lived in the same residence with the offender. "Dating partner" shall not include a casual relationship or ordinary association between persons in a business or social context.

(3) "Family member" means spouses, former spouses, parents and children, stepparents, stepchildren, foster parents, foster children, other ascendants, and other descendants. "Family member" also means the other parent or foster parent of any child or foster child of the offender.

(4) "Household member" means any person presently or formerly living in the same residence with the offender and who is involved or has been involved in a sexual or intimate relationship with the offender, or any child presently or formerly living in the same residence with the offender, or any child of the offender regardless of where the child resides.

La. Code Evid. art. 412.4.

La. C.E. art. 412.4 is intended to be an exception to Article 404(B)(1), which limits the use of other crimes evidence to non-propensity purposes and specifically prohibits evidence that tends to show the defendant's criminal propensity. *See State v. Simmons,* 21-0547 (La. App. 4 Cir. 11/24/21), 332 So.3d 158, 161, *writ denied*, 22-112 (La. 3/15/22), 334 So.3d 397, citing Louisiana Practice Evidence Art. 412.4, Evidence of Similar Crimes, Wrongs, or Acts in Domestic Abuse Cases and Cruelty Against Juveniles Cases (2021 ed.). Consequently, La. C.E. art. 412.4 allows the admission of other incidents of domestic abuse for any relevant purpose, including the defendant's character and his acts in conformity therewith, subject only to the balancing test established by La. C.E. art. 403. *State v. Gonzales*, 21-686 (La. App. 5 Cir. 1/24/22), 2022 WL 209619 (quotations omitted). The admissibility of evidence under this article is not limited to those actions that are identical or even similar in nature to the charged crime. *Id.*, citing *State v. Ard*, 20-221 (La. App. 5 Cir. 4/28/21), 2021 WL 1660916.

The *res nova* issue presented in this writ application is whether La. C.E. art. 412.4 permits prior acts, not similar in nature to the charged crime *and* involving domestic abuse of a victim with a different type of "domestic" relationship to the defendant (i.e. not similarly situated victims), to be admissible at trial in the charged crime involving domestic abuse as statutorily defined.[2]

---

[2] Although this Court has recently considered La. C.E. art. 412.4 where the other crimes evidence introduced involved prior acts where other family members were present, we have only done so in the context of considering the admissibility of those prior acts where the prior act also involved the victim in the charged crime in order to show the "volatile relationship" between the defendant and the victim in the charged crime. *See State v. Gatson*, 21-156 (La. App. 5 Cir. 12/29/21), 334 So.3d 1021, 1037.

5

A reading of the plain language of the statute suggests that evidence of other crimes or acts involving abusive behavior, defined broadly as any threatened use of force against "a family member, household member, or dating partner of the alleged offender" is admissible in connection with a charged crime involving abusive behavior of "a family member, household member, or dating partner." The plain language of the article includes no limitation to exclude evidence of prior acts if the involved "family member, household member, or dating partner" (victim) of the prior alleged acts is not similarly situated to the "family member, household member, or dating partner" (victim) of the charged crime.

A review of the legislative intent or intended purpose of the article reflects that proposed House Bill 590 was offered in response to district attorneys' frustration with La. C.E. art. 404(B)'s evidentiary restrictions to only permit admission of evidence of prior abuse similar in type or nature. The legislative history further reflects that La. C.E. art. 412.4 was modeled after California Code of Evidence Section 1109, enacted in 2006, which provides in pertinent part:[3]

> (a)(1) Except as provided in subdivision (e) or (f), in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other domestic violence is not made inadmissible by Section 1101 if the evidence is not inadmissible pursuant to Section 352.
>
> *        *        *
>
> (b) In an action in which evidence is to be offered under this section, the people shall disclose the evidence to the defendant, including statements of witnesses or a summary of the substance of any testimony that is expected to be offered, in compliance with the provisions of Section 1054.7 of the Penal Code.
>
> (c) This section shall not be construed to limit or preclude the admission or consideration of evidence under any other statute or case law.
>
> *        *        *
>
> (3) "Domestic violence" has the meaning set forth in Section 13700 of the Penal Code. Subject to a hearing conducted pursuant to Section 352, which shall include consideration of any corroboration and remoteness in time, "domestic violence" has the further meaning as set forth in Section 6211 of the Family Code, if the act occurred no more than five years before the charged offense.
>
> (e) Evidence of acts occurring more than 10 years before the charged offense is inadmissible under this section, unless the court determines that the admission of this evidence is in the interest of justice.

Cal. Evid. Code § 1109.

---

[3] *See* Louisiana House of Representatives, Administration of Criminal Justice Committee (3/23/16), H.B. 590, *available at* https://house.louisiana.gov/H_Video/VideoArchivePlayer?v=house/2016/mar/0323_16_CJ (1:25:01-1:38:03).

Under the California Family Code, as referenced in Section 1109(3), domestic violence is defined as follows:

> "Domestic violence" is abuse perpetrated against any of the following persons:
> (a) A spouse or former spouse.
> (b) A cohabitant or former cohabitant, as defined in Section 6209.
> (c) A person with whom the respondent is having or has had a dating or engagement relationship.
> (d) A person with whom the respondent has had a child, where the presumption applies that the male parent is the father of the child of the female parent under the Uniform Parentage Act (Part 3 (commencing with Section 7600) of Division 12).
> (e) A child of a party or a child who is the subject of an action under the Uniform Parentage Act, where the presumption applies that the male parent is the father of the child to be protected.
> (f) Any other person related by consanguinity or affinity within the second degree.

Cal. Fam. Code § 6211.

California Family Code Section 6211 broadly defines "domestic violence" as abuse perpetrated against a spouse or "[a]ny other person related by consanguinity or affinity within the second degree." *People v. Wang*, 46 Cal. App. 5th 1055, 1076-77, 260 Cal.Rptr.3d 343, 361 (2020), *review denied* (June 24, 2020), citing Code of Evidence Section 1109(f). In interpreting Code of Evidence Section 1109, California courts have similarly held that "[n]othing in this language limits admissibility to the same type of offense." *People v. Monge*, No. C058921, 2011 WL 6888474, (Cal. Ct. App. Dec. 28, 2011). However, concerning remoteness of the prior acts alleged, the California Code of Evidence statutorily excludes prior acts of abuse occurring more than either five or ten years prior to the charged offense under Section 1109(d) and (e), except under certain circumstances.

This Court has recently explained that the "starting point in the interpretation of any statute is the language of the statute itself." *Handy v. Par. of Jefferson*, 20-122 (La. App. 5 Cir. 6/1/20), 298 So.3d 380, 389. It is a basic principle of statutory construction that the legislature is presumed to have intended every word and phrase included in a statute to have some meaning and that none was inserted by accident. *Id.*, citing *ABL Management, Inc. v. Board of Sup'rs of Southern University*, 00-0798 (La. 11/28/00), 773 So.2d 131, 135 (quotations omitted). In drafting La. C.E. art. 412.4, the Louisiana legislature chose not to include a provision limiting the admissibility of prior acts of domestic abuse based on the remote date of a prior act.

While remoteness in time is one factor to be considered when determining whether the probative value of the evidence outweighs its prejudicial effect pursuant to La. C.E. art. 403, generally a lapse in time will go to the weight of the evidence, rather than to its admissibility. *State v. Jackson*, 625 So.2d 146, 149 (La. 1993); *State v. Bolden*, 257 La. 60, 241 So.2d 490, 491-92 (1970). Moreover, under an analysis of admissibility of sex crimes evidence under La. C.E. art. 412.2[4], this Court has pointed out that the legislature has not addressed a

---

[4] This Court has considered that La. C.E. art. 412.2 and 412.4 are similar in intent to permit a broader scope of evidence to be admissible in domestic abuse and cruelty to juvenile cases. *State v. Thomas,* 19-582 (La. App. 5 Cir. 7/29/20), 300 So.3d 517, 527, *writ denied,* 20-01503 (La. 3/2/21), 311 So.3d 1053.

temporal limitation in La. C.E. art. 412.2 and that prior sex crimes that occurred several years earlier have not been excluded because of the length of time that has passed between the prior alleged act and the charged offense. *See State v. Evans*, 19-237 (La. App. 5 Cir. 6/3/20), 298 So.3d 394, 403. Similarly, we emphasize that the legislature in drafting La. C.E. art. 412.4 has not addressed a temporal limitation, despite the fact that the California Code of Evidence Section 1109, from which the Louisiana article is modeled, does contain such a limitation.

A review of the jurisprudence reveals that, overwhelmingly, these evidentiary articles (La. C.E. art. 412.4 and Ca. Code of Evidence Section 1109) are applied in domestic abuse cases where the defendant's relationship with the victim in the charged offense is similar to the defendant's relationship with the victim in the prior alleged acts. However, California courts have permitted on occasion admission of evidence of prior domestic violence against one victim (i.e., a child or other family member) in connection with the trial of a charged crime involving domestic violence against a victim with a different type of relationship to the defendant (i.e., a spouse or dating partner). *See People v. Wang*, *supra* (wherein the California appellate court found admissible prior acts of domestic violence by defendant-husband against his wife in connection with the charged crime of the murder of his wife's parents); *see also People v. Rowe*, No. F078149, 2022 WL 1700450 (Cal. Ct. App. May 27, 2022)(wherein the California appellate court found evidence of domestic abuse against domestic partners and girlfriends permitted in connection with the defendant's murder charge of girlfriend's newborn baby); *People v. Cabada*, No. 2D CRIM. B255599, 2015 WL 5445824 (Cal. Ct. App. Sept. 16, 2015), *as modified* (Sept. 24, 2015)(wherein the California appellate court found evidence of a prior bad act of violence against his mother was admissible, when defendant's current charge was domestic abuse of his domestic partner and children, to demonstrate defendant's "propensity to physically abuse female family members[;]" *but see People v. Williams*, 23 Cal. App. 5th 396, 420–21, 232 Cal. Rptr. 3d 671, 690 (2018)(holding that "[t]he discretion to admit prior acts evidence to show intent is broad, but not unbounded" and finding defendant's murder conviction for the intentional fatal shooting of his former wife, which occurred 23 years prior to the charged offense of murder of his then current wife by stabbing with a knife, inadmissible).

Upon considering defendant's writ application and attachments thereto, we find that when the charged crime is a crime involving domestic abusive behavior as statutorily defined, La. C.E. art. 412.4 permits the admission of evidence of a defendant's prior acts of domestic abusive behavior, as statutorily defined, against any other domestic abuse victim, as defined in La. C.E. art. 412.4. We therefore cannot say that the trial judge abused his discretion in granting the State's Notice of Intent to introduce prior acts of domestic violence involving his wife and stepdaughter. However, we grant this writ in part, and find that any evidence of the July 13, 2003 incident wherein defendant is alleged to have removed the water meter from the residence is not an admissible prior act of domestic abusive behavior as contemplated under La. C.E. art. 412.4.

Although we find that the trial judge did not abuse his discretion in finding the prior alleged acts may be admissible under La. C.E. art. 412.4, we caution that the Louisiana Supreme Court has instructed that "the volume of other crimes evidence should be considered in determining if such evidence should be admissible at trial." *State v. Hernandez*, 11-712 (La. App. 5 Cir. 4/10/12), 93

So.3d 615, 630, (Wicker, J., concurring), *writ denied sub nom. State ex rel. Hernandez v. State*, 12-1142 (La. 9/28/12), 98 So.3d 834, citing *State v. Kelly,* 01–0124 (La. 6/29/01), 791 So.2d 1286, 1287. The Court has further instructed that prior crimes evidence which may be "cumulative, repetitive, or excessive" should not be admitted. *Id.* In considering the volume and extent of evidence presented on other crimes, the court should evaluate whether "[t]he volume of the state's evidence of other crimes creates an undue risk that at trial it may overwhelm the single allegation" of the charged offense. *Id.* In conducting the balancing test provided in La. C.E. art. 403 and in considering the order of trial, the trial judge should apply these concepts where appropriate.

## Conclusion

Accordingly, for the reasons provided herein, we grant this writ in part and determine that evidence of the July 13, 2003 incident involving the removal of the residence's water meter is not admissible as contemplated under La. C.E. art. 412.4. In all other respects, the writ is denied.

**WRIT GRANTED IN PART; WRIT DENIED IN PART**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
INTERIM CHIEF DEPUTY CLERK

SUSAN S. BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**JULY 6, 2022** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT
REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

**22-K-269**

### E-NOTIFIED
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE E. ADRIAN ADAMS (DISTRICT JUDGE)
KATHRINE E. ELLIS (RELATOR)          THOMAS J. BUTLER (RESPONDENT)

### MAILED
JEFFREY HUFFT (RELATOR)           JAMES A. WILLIAMS (RELATOR)        LINDSAY L. TRUHE (RESPONDENT)
ATTORNEY AT LAW                   JARED L. SHURMAN (RELATOR)         ASSISTANT DISTRICT ATTORNEY
3500 CAUSEWAY BOULEVARD           ATTORNEYS AT LAW                   TWENTY-FOURTH JUDICIAL DISTRICT
SUITE 185                         706 DERBIGNY STREET                200 DERBIGNY STREET
METAIRIE, LA 70002               GRETNA, LA 70053                   GRETNA, LA 70053