CHEHARDY, C.J.
hOn appeal, defendant challenges his second degree murder convictions. For the following reasons, we affirm.
Procedural History
On February 20, 2014, the Jefferson Parish grand jury indicted defendant, Ta-vis C. Joseph, and two co-defendants for the second degree murders of Nikiayh Westerfield and Dave Harrison, violations of La. R.S. 14:3o.!.[1] On June 25, 2015, the trial court heard and denied defendant’s motion in limine to prohibit the introduction of “other crimes” evidence. Defendant sought review of that ruling in a timely-filed writ application, which this Court denied.[2]
On July 27, 2015, trial commenced before a twelve-person jury, which, after three days of testimony, found defendant guilty as charged on both counts. On August 12, 2015, defendant filed a motion for a new trial, motion for post-verdict judgment of acquittal, and motion for appeal. On January 8,2016, newly enrolled counsel filed a supplemental motion for a new trial.
On February 1, 2016, the trial court heard and denied defendant’s original motion and supplemental motion for new trial. On February 3, 2016, the trial court heard and denied defendant’s motion for post-verdict judgment of acquittal. Immediately thereafter, the trial court sentenced defendant to life imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence on each count, to run concurrently. The trial judge thereafter granted defendant’s motion for appeal. The instant appeal follows.
j^Facts
At 11:56 p.m. on August 13, 2013, 9-1-1 operators received reports of gunshots fired in the 4000 block of Paige Jeannette in the Woodmere Subdivision of Harvey, *1040 Louisiana. When Jefferson Parish Sheriffs Office (“JPSO”) deputies responded, they found Dave Harrison and Nikiayh Wester-field sitting in a Chevrolet Blazer on the street. Detective Gary Barteet, who was the lead investigator, recalled that, when he arrived, he observed Mr. Westerfield in the driver’s seat and Mr. Harrison in the passenger backseat; both men had been shot. Autopsy confirmed that the two men died from multiple gunshot wounds.[3]
Detective Barteet testified that, at the crime scene, JPSO recovered evidence from the ground near the vehicle, including shell casings, a red Nike sandal, and a cell phone. From inside the vehicle, JPSO recovered three phones, a clear bag containing marijuana, a wooden rosary, and two firearms — a Kimber .40 caliber semiautomatic firearm with an aftermarket extended magazine and a Colt .38 caliber revolver. The Kimber was found on the “center hump between the driver’s seat and the passenger’s seat” and the Colt was found on the “floorboard behind the driver’s seat.”
Furthermore, JPSO found “apparent blood transfer” on the front passenger seat of the victims’ vehicle, which indicated that there was a third person in the car. Detective Barteet testified that, because there was a bag of marijuana in the hand of one of the victims, officers thought the incident was a “drug deal gone bad” or a “drug rip.”
Detective Barteet learned, almost immediately after the shooting was reported, that a man, later identified as Jeremy Coleman, arrived at West Jefferson Hospital with a gunshot wound. The hospital’s security camera footage revealed [¡¡that Mr. Coleman arrived at the emergency room at 12:05 a.m, in a black SUV with two other individuals. The two individuals were later identified as Tavis Joseph, defendant-herein, and Irvin Harris,
Detective Barteet, with the assistance of the crime lab, determined that the phone found at the crime scene on the ground near the vehicle belonged to Irvin Harris. Detective Barteet searched through phone calls and text messages and learned that the victims, Mr. Westerfield and Mr. Harrison, had arranged to meet Mr. Coleman on Paige Jeanette Street on August 13, 2013 so that Mr. Coleman could purchase an ounce of “high grade marijuana” from Mr. Westerfield for $330.00. Phone records revealed that defendant, Mr. Harris, and Mr. Coleman were communicating in the hour or so leading up to the shooting but defendant did not communicate with Mr. Westerfield.[4]
Further, JPSO digital forensic analysts extracted data from Jeremy Coleman’s and Irvin Harris’ individual cell phones. The photos and videos recovered showed: photos of a Kimber firearm with an aftermarket extended magazine; pictures of Mr. Harris armed with a Glock; pictures *1041 of Mr. Coleman armed with a Kimber; photos of Mr. Harris, Mr. Coleman, and defendant leaning against the hood of a GMC Envoy (the seized vehicle); photos depicting defendant and Mr. Coleman smoking a “blunt;” videos of Mr. Coleman and Mr. Harris holding firearms, including a Glock and Kimber; and a video of defendant sitting in a vehicle, with Mr. Harris, who was brandishing a Glock in the driver’s seat as defendant sat next to him in the passenger seat.
Colonel Tim Scanlan, the laboratory services commander for the Jefferson Parish Sheriffs Office, testified that he participated in the investigation in several |4ways: first, processing the vehicle the victims were found in; second, conducting an examination of the ballistics evidence that was recovered in connection with this case; and, third, conducting a crime scene reconstruction.
Colonel Scanlan testified that, although there were two firearms recovered from the scene, there were at least four separate weapons fired during the incident.[5] Based on the casings and projectiles recovered from the crime scene and the autopsies, Colonel Scanlan concluded that four weapons were used: the Kimber, the Glock, and two unrecovered 9-mm caliber weapons. Only the Kimber was recovered at the scene.
Colonel Scanlan testified that the .40 caliber casings recovered outside of the vehicle were linked to a stolen Glock.[6] With regard to the Kimber, two rounds were fired but the second round failed to eject properly and jammed the weapon. Further, projectiles recovered at the autopsy of Mr. Westerfield were linked to the Kimber, the Glock, and one of the 9-mm weapons.[7]
Based on the location of the casings, Colonel Scanlan opined that the pattern was consistent with focused fire, aimed at the front driver’s side and a “more stationary shooter.” Colonel Scanlan testified that, from the casings of the stolen Glock that were recovered at the scene, the grouping was consistent with fire focused from outside of the vehicle into the driver’s side of the vehicle. Additionally, Colonel Scanlan stated that the 9-mm casings recovered from inside | fithe car were consistent with somebody going to the passenger side, leaning in, and firing into the vehicle.[8]
Jeremy Coleman testified at trial. Mr. Coleman admitted that he had previously pled guilty to two counts of manslaughter and one count of possession of a stolen firearm, in connection with the deaths of *1042 Mr. Westerfield and Mr. Harrison. At trial, Mr. Coleman agreed that:
On August 13, 2013, Jeremy Coleman made arrangements to meet Nikiayh Westerfield. The stated purpose of the meeting was for Mr. Coleman to purchase an ounce of marijuana from Mr. Westerfield for $330. Mr. Coleman, Iran Harris, Tavis Joseph and a fourth individual. . .went together to the location of the murder. All four of them were armed with guns... [and] instead of completing the drug transaction, it was the intent of Mr. Coleman and of his three companions to rob Mr. Wester-field. Mr. Coleman pulled out the Kim-ber [semi-automatic handgun] to facilitate the robbery after he entered the front passenger side of the car occupied by Westerfield and Harrison. Mr. Wes-terfield was not armed. Shots were fired by Mr. Coleman and his three companions that resulted in the deaths of Mr. Westerfield and Mr. Harrison.
Colonel Scanlan confirmed that Mr. Coleman’s admission was consistent with the physical evidence.
Detective Barteet also testified about the statement that defendant provided at his interview on January 18, 2014, which was videotaped and played for the jury. In his interview, defendant stated that he was with his girlfriend, Karlinda Brooks, the night of the shooting. At trial, Karlinda Brooks admitted that she was dating defendant in August 2013 but did not remember where defendant was on the night that Mr. Coleman was shot. She testified that she did not remember talking with defendant about the circumstances surrounding how Mr. Coleman was shot.
After hearing the testimony and evidence, the twelve-person jury found defendant guilty as charged.
| ^Discussion
On appeal, defendant raises four assignments of error: first, the verdict is contrary to the law and the evidence; second, the district court respectfully erred in the denial of the motion for post-verdict judgment' of acquittal; third, the district court respectfully erred in the denial of the motion for new trial; and, finally, the district court erred in the denial of the motion in limine to prohibit the introduction of evidence of other crimes.
We will address defendant’s first two assignments of error, which are connected, together. In them, defendant argues that the evidence was insufficient to support his convictions of second degree murder. Defendant contends there was a lack of physical evidence that connected him to the crimes. Further, he avers that the circumstantial evidence and witness testimony was not reliable and that every reasonable hypotheses of innocence was not excluded. He claims that, when all the evidence, including the phone records, work records, video evidence, and defense testimony is viewed correctly, reasonable doubt exists that defendant was present at the time of the homicides.
The question of sufficiency of the evidence is properly raised in the trial court by a motion for post-verdict judgment of acquittal pursuant to La. C.Cr.P. art. 821. State v. Bazley, 09-358 (La.App. 5 Cir. 1/11/11), 60 So.3d 7, 17, writ denied, 11-282 (La. 6/17/11), 63 So.3d 1039. Here, defendant filed a motion for post-verdict judgment of acquittal raising the insufficiency of evidence to support the verdicts of guilty of second degree murder.
In reviewing the sufficiency of evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecu *1043 tion, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Neal, 00-0674 (La. 6/29/01), 796 So.2d 649, 657, cert. denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002).
Because the evidence must be viewed in the light most favorable to the prosecution, the reviewing court is required to defer to the actual trier of fact’s rational credibility calls, evidence weighing, and inference drawing. State v. Caffrey, 08-717 (La.App. 5 Cir. 5/12/09), 15 So.3d 198, 202, writ denied, 09-1305 (La. 2/5/10), 27 So.3d 297. This deference to the fact-finder does not permit a reviewing court to decide whether it believes a witness or whether the conviction is contrary to the weight of the evidence. Id. Indeed, a reviewing court errs by substituting its appreciation of the evidence and the credibility of witnesses for that of the fact-finder and overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury. See State v. Calloway, 07-2306 (La. 1/21/09), 1 So.3d 417, 418. As a result, under the Jackson standard, a review of the record for sufficiency of the evidence does not require the reviewing court to determine whether the evidence at the trial established guilt beyond a reasonable doubt, but whether, upon review of the whole record, any rational trier of fact would have found guilt beyond a reasonable doubt. State v. Jones, 08-20 (La.App. 5 Cir. 4/15/08), 985 So.2d 234, 240.
In making this determination, a reviewing court will not re-evaluate the credibility of witnesses or re-weigh the evidence. Caffrey, supra. Indeed, the resolution of conflicting testimony rests solely with the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. See State v. Bailey, 04-85 (La.App. 5 Cir. 5/26/04), 875 So.2d 949, 955, writ denied, 04-1605 (La. 11/15/04), 887 So.2d 476, cert. denied, 546 U.S. 981, 126 S.Ct. 554, 163 L.Ed.2d 468 (2005). Thus, in the absence of internal contradiction or irreconcilable conflicts with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient to support a conviction. State v. Dixon, 07-915 (La.App. 5 Cir. 3/11/08), 982 So.2d 146, 153, writ denied, 08-0987 (La. 1/30/09), 999 So.2d 745.
Defendant was convicted of the second degree murders of Nikiayh Wester-field and Dave Harrison in violation of La. R.S. 14:30.1. Under La. R.S. 14:30.1, second degree murder is defined as the killing of a human being when the offender: 1) has specific intent to kill or to inflict great bodily harm; or 2) is engaged in the perpetration or attempted perpetration of one of several enumerated felonies, including but not limited to aggravated burglary, armed robbery, first degree robbery, second degree robbery, and simple robbery, even though he has no intent to kill or to inflict great bodily harm. See State v. Lewis, 05-170 (La.App. 5 Cir. 11/29/05), 917 So.2d 583, 589-90, writ denied, 06-0757 (La. 12/15/06), 944 So.2d 1277. In this case, according to the jury instructions, the State prosecuted this case under both theories of murder for both counts: specific intent murder and murder while committing or attempting to commit armed robbery.
Under the first theory of second degree murder, the State had to prove that defendant had the specific intent to Mil or to inflict great bodily harm. Specific intent is “that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or *1044 failure to act.” La. R.S. 14:10(1). The determination of specific intent is a question of fact. State v. Durand, 07-4 (La.App. 5 Cir. 6/26/07), 963 So.2d 1028, 1034, writ denied, 07-1546 (La. 1/25/08), 973 So.2d 753. Specific intent may be inferred from the circumstances and from the defendant’s actions, and the intent to kill or to inflict great bodily harm may be inferred from the extent and severity of the victim’s injuries. Id. Further, a specific intent to kill may be inferred from the intentional use of a deadly weapon such as a knife or gun. State v. Cochran, 09-85, p. 18 (La. App. 5 Cir. 6/23/09), 19 So.3d 497, 508, writ denied, 09-1742 (La. 3/26/10), 29 So.3d 1249; see also State v. Gonzalez, 07-449, p. 8 (La.App. 5 Cir. 12/27/07), 975 So.2d 3, 8, writ denied, 08-228 (La. 9/19/08), 992 So.2d 949 (“The act of aiming a lethal weapon and discharging it in the direction of the victim supports a finding by the trier of fact that the defendant acted with specific intent to kill.”).
Under the second theory of second degree murder, the State had to prove that defendant was engaged in the perpetration or attempted perpetration of armed robbery, even though he had no intent to kill or to inflict great bodily harm. Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. La. R.S. 14:64.
In addition to proving each statutory element of the crime charged, the State must also prove the identity of the perpetrator. State v. Williams, 08-272 (La.App. 5 Cir. 12/16/08), 3 So.3d 526, 529, writ denied, 09-0143 (La. 10/16/09), 19 So.3d 470. Where the key issue is identification, the State is required to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Nelson, 14-252 (La.App. 5 Cir. 3/11/15), 169 So.3d 493, 500, writ denied, 15-685 (La. 2/26/16), 187 So.3d 468.
' In this case, defendant maintains that the evidence presented did not connect him to the crimes. Defendant argues that the testimony of Jeremy Coleman, which directly implicates defendant in these crimes, was unreliable.
Jeremy Coleman, who pled guilty to these crimes, testified that defendant was at the crime scene, brought a weapon with him, and took part in the shooting. He testified it was their intent to rob the victims. His testimony was corroborated by the physical evidence. Colonel Scanlan testified at trial that, based oh his examination of the evidence, four weapons, three of which were not recovered, were used in the shootings.
| inIn Louisiana, as á general principle of law, a conviction may be sustained on the corroborated testimony of a purported accomplice. State v. Tate, 01-1658 (La. 5/20/03), 851 So.2d 921, 928. Furthermore, although defendant presented evidence suggesting that he was at work on the night of the shooting, the jury obviously believed the testimony of the State’s witnesses over the testimony presented by defendant.
The determination of credibility of witnesses presenting conflicting testimony on factual matters is within the sound discretion of the trier of fact. Jones, supra. WZhere there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of witnesses, this is a matter of the weight of the evidence, not its sufficiency. State v. Miller, 11-498 (La.App. 5 Cir. 12/13/11), 84 So.3d 611, 617, writ denied, 12-176 (La. 9/14/12), 97 So.3d 1012.
*1045 Based on the foregoing, we find that a rational trier of fact could have found that the evidence was sufficient under the Jackson standard that defendant was a perpetrator of the second degree murders of Mr. Westerfield and Mr. Harrison.[9] Therefore, we find that the trial court did not abuse its discretion in denying defendant’s motion for post-judgment acquittal based on the sufficiency of the evidence. These assignments of error lack merit.
In his third and fourth assignments of error,[10] defendant argues that the trial court erred in admitting certain videos and photographs into evidence. He asserts that there was no reason for this evidence to be deemed admissible at trial because |nthe evidence did not establish identity, motive or any other permissible use under La. C.E. art. 404(B). He contends the admission of this evidence denied him a fair trial, as the reason this evidence was introduced was to show him as a bad man. Further, he alleges that the danger of unfair prejudice substantially outweighed any probative value. He claims that because of the substantial rights that were violated, it is inappropriate to apply the harmless error rule.
Defendant filed a motion in limine to prohibit the introduction of evidence of other crimes. Specifically, the motion sought to exclude “video #0295 on the phone of Irvin Harris, which depicts Tavis Joseph in constructive possession of a stolen handgun” as well as text messages and images on the phones of Jeremy Coleman and Irvin Harris, which involve the sale of and/or consumption of marijuana.
At the hearing on the motion in limine, defense counsel argued that the exclusion of the video was warranted because it showed a weapon that was potentially stolen with defendant in the vehicle. Defense counsel reasoned that “constructive possession of a stolen weapon” was “another crime, or could be considered illegal carrying of a weapon while being in the presence of one,” which was “highly prejudicial.” She further argued that the phone records involving communications about selling and smoking marijuana should be excluded because they were not relevant. The court replied that was “the premiss [sic] of the State’s case. This was a drug rip off.” Defense counsel argued that those videos and photos showed prior bad acts of defendant that had no bearing on the instant case, namely, that he possibly had smoked marijuana.
*1046 The State responded that “the firearms that are depicted in photographs and videos are in fact.. .at least two of the weapons that were used during the course of the murder by the perpetrators.” The photographs and videos “showing these individuals in possession of those firearms certainly would be relevant to establish 112the elements of the State’s case, including identity and opportunity.” The State further argued that the phone records discussing the sale and use of marijuana “goes to the heart” of the State’s case, which was that “this [was] a drug rip... or a drug deal gone bad” and to deprive the State of “the opportunity to present that evidence to the jury would paint a very incomplete picture... of why these individuals were present.”
Defense counsel countered that with respect to motive, it had to be specific to that individual victim and that video did not depict any evidence in the instant case regarding either victim. She further countered that with respect to intent, the video did not show intent. As to identity, defense counsel stated that the video was not going to show that defendant was on the scene. She argued that the evidence in question was inflammatory and very prejudicial and should be excluded. The prosecutor then offered, filed, and introduced the “entire trial record in the matter of State versus Irvin Harris,” and he asked the trial judge to take judicial notice pursuant to La. C.E. art. 201, testimony adduced during the course of that trial and to consider all the physical evidence during that trial in support of its position on this motion. The trial judge allowed that and then denied defense counsel’s motion.
Defense counsel filed a supervisory writ with this Court, seeking review of the trial court’s denial of the motion in limine. This Court noted that neither the video, nor text messages, nor photos at issue were attached to the writ application, nor was the trial record from Mr. Harris’ trial, which was introduced at the hearing. This Court denied the writ on the showing made and noted that defendant had an adequate remedy on appeal if convicted. Further, we note that the record reflects that, at trial, the photographs were admitted over defense counsel’s objection, but there was no contemporaneous objection to the admission of the summary of text messages and the publication of the videos to the jury.
11sGenerally, evidence of other crimes or bad acts committed by a criminal defendant is not admissible at trial. La. C.E. art. 404(B)(1); State v. Prieur, 277 So.2d 126, 128 (La. 1978). However, when such evidence tends to prove a material issue and has independent relevance other than to show that the defendant is of bad character, it may be admitted by certain statutory and jurisprudential exceptions to this rule. State v. Dauzart, 02-1187 (La.App. 5 Cir. 3/25/03), 844 So.2d 159, 165. Evidence of other crimes is allowed to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct, formerly referred to as res gestae, that constitutes an integral part of the act or transaction that is the subject of the present proceeding. La. C.E. art. 404(B)(1).
Res gestae events constituting “other crimes” are deemed admissible because they are so nearly connected to the charged offense that the State could not accurately present its case without reference to them. State v. Taylor, 01-1638 (La. 1/14/03), 838 So.2d 729, 741, cert. denied, 540 U.S. 1103, 124 S.Ct. 1036, 157 L.Ed.2d 886 (2004). The res gestae doctrine is broad and includes not only spontaneous utterances and declarations made before or after the commission of the crime but also testimony of witnesses and police offi *1047 cers pertaining to what they heard or observed during or after the commission of the crime, if a continuous chain of events is evident under the circumstances. Taylor, 838 So.2d at 741.
The res gestae doctrine is designed to allow the story of the crime to be told in its entirety, by proving its immediate context of happenings in time and place. Taylor, 838 So.2d at 741. The Louisiana Supreme Court has held that the test of whether res gestae evidence is admissible is not simply whether the State might somehow structure its case to avoid any mention of the uncharged act or conduct, but whether doing so would deprive its case of narrative momentum and cohesiveness, with power not only to support conclusions, but to sustain the 1 ^willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict. State v. Colomb, 98-2813 (La. 10/1/99), 747 So.2d 1074, 1076.
In order for other crimes evidence to be admitted under La. C.E. art. 404(B)(1), one of the factors enumerated in the article must be at issue, have some independent relevance, or be an element of the crime charged. State v. Jackson, 625 So.2d 146, 149 (La. 1993). Further, the probative value of the extraneous evidence must outweigh its prejudicial effect. La. C.E. art. 403. The defendant bears the burden to show that he was prejudiced by the admission of the other crimes evidence. Dauzart, 844 So.2d at 165-66. Absent an abuse of discretion, a trial court’s ruling on the admissibility of evidence pursuant to La. C.E. art 404(B)(1) will not be disturbed. State v. Williams, 02-645 (La.App. 5 Cir. 11/26/02), 833 So.2d 497, 507, writ denied, 02-3182 (La. 4/25/03), 842 So.2d 398.
In the present ease, Detective Barteet testified that without any eyewitnesses to the shooting, the initial focus of the investigation was the cell phones discovered at the crime scene. From pictures found on Mr. Harris’ phone, which was found at the scene, Detective Barteet was able to link Mr. Savage’s stolen Glock as the same Glock depicted in one photo and further as one of the weapons used in the shooting. A photo recovered from the phone also depicted a Kimber. The video in question depicted Mr. Harris brandishing a Glock next to defendant.
This evidence was used to link Mr. Coleman, Mr. Harris, and defendant together and show that defendant had access to weapons of the type used in the shooting. Photos from the phones also depict Mr. Coleman, Mr. Harris, and defendant smoking what appears to be marijuana. Marijuana was also found at the crime scene in the hands of one of the victims. The State, in its presentation of the case, theorized that these crimes resulted from a drug rip off. Evidence of a defendant’s prior drug use may be admissible to show his motive for committing murder. State v. Smith, 11-0091 (La.App. 4 Cir. 7/11/12), 96 So.3d 678, 692, writ denied, 12-2069 (La. 3/15/13), 109 So.3d 375.
Additionally, the phone records summary showing text messages that set up the drug transaction between the co-defendants and one of the victims, Mr. Westerfield, do not include any communications made by or to defendant. La. C.E. art. 404(B)(1) only prohibits evidence of other crimes or bad acts committed by a defendant. State v. Davis, 08-165 (La.App. 5 Cir. 7/29/08), 993 So.2d 295, 304, writ denied, 08-2188 (La. 5/1/09), 6 So.3d 810.
Even assuming arguendo that evidence of defendant’s other bad acts constituted inadmissible other crimes evidence, any such error is subject to a harmless error analysis. See State v. Williams, *1048 09-48 (La.App. 5 Cir. 10/27/09), 28 So.3d 357, 365, writ denied, 09-2565 (La. 5/7/10), 34 So.3d 860. The test for determining if an error was harmless is whether the verdict actually rendered in the case was surely unattributable to the error. Id,
In the instant case, defendant was implicated in the crime by Mr. Coleman. His testimonial evidence was corroborated by the physical evidence. Surveillance video and cell phone tower evidence placed defendant at the hospital with Mr. Coleman shortly after the shooting. Therefore, even if it was error to admit the challenged evidence of other crimes, the evidence of defendant’s guilt rendered any such error harmless. Accordingly, we find that the trial court did not abuse its discretion by denying defendant’s motion in limine and in admitting this evidence. Because we find that the trial court did not err in denying defendant’s motion in limine, we likewise find that the trial court did not abuse its discretion in denying defendant’s motion for new trial on this basis. These assignments lack merit.
Errors patent
Finally, according to La. C.Cr.P, art. 920; State v. Oliveaux, 312 So.2d 337 (La. 1975); and State v. Weiland, 556 So.2d 175 (La. App. 5 Cir. 1990), we have | ^reviewed the record for error patent and found that neither the sentencing transcript nor the minute entry reflect that defendant was given a proper advisal of the time period for seeking post-conviction relief as required by La. C.Cr.P. art. 930.8. If a trial court fails to advise, or provides an incomplete advisal, pursuant to La. C.Cr.P. art. 930.8, the appellate court may correct this error by informing the defendant of the applicable prescriptive period for post-conviction relief by means of its opinion. See State v. Brooks, 12-226 (La. App. 5 Cir. 10/30/12), 103 So.3d 608, writ denied, 12-2478 (La. 4/19/13), 111 So.3d 1030. Accordingly, by way of this opinion, we advise defendant that no application for post-conviction relief, including applications that seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C.Cr.P. arts. 914 or 922.
Decree
For the foregoing reasons, defendant’s convictions and sentences are affirmed.
AFFIRMED

. Co-defendants Jeremy R. Coleman and Irvin Harris were also indicted for the homicides and additionally charged with illegal possession of a stolen firearm. In the same indictment, Irvin Harris, Edward Harris, and Kanetra T. Whyte were charged with conspiracy to commit obstruction of justice. The matters were severed and only Mr. Joseph's convictions are the subject of this appeal. For clarity, we note that Irvin Harris’ convictions and sentences have been affirmed by this Court. See State v. Harris, 15-485 (La.App. 5 Cir. 4/13/16), 190 So.3d 466. Mr. Harris has applied for review from the Louisiana Supreme Court.

. See State v. Tavis Joseph, 15-K-419 (La. App. 5 Cir. 7/10/15)(unpublished writ disposition).

. Dr. Dana Troxclair, a forensic pathologist with the Jefferson Parish Coroner’s Office, testified that Dave Harrison received four gunshot wounds, which caused his death. Dr. Susan Garcia, also a forensic pathologist with the Jefferson Parish Coroner's Office, testified that Nikiayh Westerfield sustained eight gunshot wounds, which caused his death.

. Ronald Kennedy, a route frequency engineer with Sprint Communications, testified regarding defendant’s cell phone records. Specifically, he testified that, on August 13, 2013, defendant’s phone made a call at 11:28 p.m, that pinged off a tower on Peters Road. Further, forty minutes later, at 12:10 a.m. on August 14, 2013, another call was made from defendant's phone that pinged off a tower near West Jefferson Medical Center. More importantly, no calls made from defendant's phone from August 13, 2013, at 9:58 p.m, until August 14, 2013, at 12:48 a.m. utilized a tower near the address where defendant purported to be that night.

. Colonel Scanlan testified that the Colt revolver that was recovered from the scene had two spent, fired cartridge casings in it with four empty chambers. No casings from the Colt revolver, other than the ones in the chamber were recovered nor were any projectiles matching the Colt recovered from the crime scene.

. Troy Savage, an investigator in the Jefferson Parish District Attorney’s Office’s Family Violence Unit, testified that in May 2013, his firearm, namely a Glock model 27 .40 caliber, was stolen out of his vehicle. He filed a police report regarding its disappearance, and later in August 2013, Detective Barteet contacted Mr. Savage requesting that Mr. Savage turn over the original gun box that the weapon came in, which included two spent casings from test fires, which is something Glock includes in the packaging of all the guns they sell. Mr. Savage’s Glock had the serial number HSB-144,

. Only two small metal fragments were recovered from Mr. Harrison, which were unidentifiable.

. David Cox, a DNA analyst with the Jefferson Parish Sheriff’s Office DNA Lab, was able to determine that DNA found on the Kimber grip and blood on the upholstery of the front passenger seat of the victim’s vehicle was consistent with Jeremy Coleman’s DNA.

. Although defendant’s sufficiency argument is focused on the State's failure to prove his identity as the perpetrator, nonetheless it appears that the State also proved that defendant had the specific intent to kill or inflict great bodily harm, which is a required element under the first definition of second degree murder set forth in La. R.S. 14:30.1(A)(1). The State presented evidence that the victims died from multiple gunshot wounds. In addition, the State presented evidence that the vehicle the victims were found in sustained substantial damage from gunfire, and ballistics material was recovered at the scene from both inside and outside the vehicle. Thus, the State presented sufficient evidence to prove the killing of a human being when the offender had the specific intent to kill or inflict great bodily harm. See State v. Fields, 08-1223 (La.App. 4 Cir. 4/15/09), 10 So.3d 350, 355, writ denied, 09-1149 (La. 1/29/10), 25 So.3d 829 (where the appellate court noted that firing a gun into an automobile occupied by two people is sufficient evidence of the intention to kill one or more of the occupants of the vehicle).

. These assignments will be addressed together because they are related. Defendant’s motion for new trial had several claims but, on appeal, defendant only challenges the trial court allowing the admission of defendant’s other crimes via the phone records of his co-defendants.