STATE OF LOUISIANA

VERSUS

VIUSQUI J. PEREZ-ESPINOSA

NO. 23-KA-353

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 17-415, DIVISION "K"
HONORABLE ELLEN SHIRER KOVACH, JUDGE PRESIDING

May 22, 2024

**FREDERICKA HOMBERG WICKER**
**JUDGE**

Panel composed of Judges Fredericka Homberg Wicker,
Scott U. Schlegel, and Timothy S. Marcel

**CONVICTION AFFIRMED; SENTENCE VACATED; REMANDED FOR
RESENTENCING**
    **FHW**
    **SUS**
    **TSM**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
      Honorable Paul D. Connick, Jr.
      Thomas J. Butler
      Andrea F. Long
      Kellie M. Rish
      Richard L. Olivier

COUNSEL FOR DEFENDANT/APPELLANT,
VIUSQUI J. PEREZ-ESPINOSA
      Jane L. Beebe

**WICKER, J.**

Defendant appeals his conviction and sentence for second degree murder. For the following reasons, we affirm defendant's conviction, vacate his sentence, and remand for resentencing.

## PROCEDURAL HISTORY

On May 4, 2017, a Jefferson Parish Grand Jury returned a bill of indictment charging defendant, Viusqui J. Perez-Espinosa, with second degree murder in violation of La. R.S. 14:30.1 (count one) and obstruction of justice in violation of La. R.S. 14:130.1 (count two). Defendant proceeded to trial. On March 26, 2018, a jury found him guilty of second degree murder by an eleven-to-one verdict and guilty of obstruction of justice by a unanimous verdict. The trial court sentenced defendant to life imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence on count one and forty years imprisonment at hard labor on count two, with the sentences to be served consecutively.

Defendant appealed and, on April 10, 2019, this Court vacated his sentences and remanded for resentencing, finding the trial court had been divested of jurisdiction prior to denying his motion for new trial and for post-verdict judgment of acquittal and imposing his sentences. *State v. Perez-Espinosa*, 18-576 (La. App. 5 Cir. 4/10/19), 269 So.3d 1119. On September 11, 2019, the trial court again denied defendant's motion and resentenced him to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence on count one and forty years imprisonment at hard labor on count two, with the sentences to run consecutively.

Defendant filed a second appeal and, on September 22, 2020, this Court affirmed his conviction and sentence for obstruction of justice (count two). However, because the verdict for his second degree murder conviction (count one) was not unanimous and the case was still on direct appeal, this Court vacated his

second degree murder conviction and sentence, pursuant to *Ramos v. Louisiana*, 590 U.S. --, 140 S.Ct. 1390, 206 L.Ed.2d 583 (2020),[1] and remanded to the trial court for further proceedings. *State v. Perez-Espinosa*, 19-601 (La. App. 5 Cir. 9/22/20), 302 So.3d 598, 602.

On remand, defendant proceeded to trial once again and, on January 31, 2023, a jury unanimously found him guilty of second degree murder. On February 9, 2023, the trial court sentenced defendant to life imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence. The court ordered the sentence to run consecutively to the forty-year sentence for obstruction of justice and to a six-month sentence imposed for contempt. This is defendant's third appeal.

## FACTS

At trial, the testimony revealed that the victim, Ives Alexis Portales-Lara (referred to as "Ives"), was last seen on November 11, 2016, when a co-worker dropped him off near his apartment after work. In the days that followed, his friends and family reached out to the Kenner Police Department to help look for him. The police subsequently found Ives' blood in the apartment he lived in with T.C.[2] and defendant, and in defendant's trunk. Parts of Ives' body were later discovered in the Reserve canal on December 29, 2016, and January 12, 2017.

T.C. testified that in January 2016, she and defendant were in a romantic relationship and moved into an apartment together. However, in the summer of 2016, defendant moved into a nearby apartment with another woman. He suggested that his co-worker, Ives, move into the apartment with T.C. to help pay

---

[1] In *Ramos*, the United States Supreme Court held that the Sixth Amendment right to a jury trial, as applied to the states by the Fourteenth Amendment, requires a unanimous verdict to convict a defendant of a serious offense. As a result, the State must retry any defendant convicted of serious offenses by non-unanimous juries and whose cases are still pending on direct appeal. *State v. Dumas*, 21-143 (La. App. 5 Cir. 11/24/21), 330 So.3d 1263, 1264.

[2] Initials are used when referencing this witness, because there are sex offense allegations included in the facts presented. *See* La. R.S. 46:1844(W)(3), which allows this Court to identify a victim of a sex offense by using his or her initials.

the rent. T.C. recalled that after Ives moved in, they began to have a sexual relationship but agreed not to tell anyone about it due to their age difference.

T.C. testified that in October of 2016, defendant wanted to move back into the apartment. She initially refused, but on November 8, 2016, at Ives' request, she allowed defendant to move back into the apartment and sleep on the sofa. Defendant wanted to get back together with T.C., but she was not interested. He asked T.C. if she was having a relationship with Ives, and she said no. Defendant expressed that he wanted Ives to leave the apartment.

T.C. testified that on the morning of Friday, November 11, 2016, defendant suddenly appeared in her bedroom, grabbed her arms, said he wanted to be with her, and violently threw her toward the bed. She threatened to scream, and he said, "don't you dare." Defendant removed T.C.'s pants and underwear against her will, performed oral sex on her, and "finishe[d] by masturbating." Defendant then apologized and left for work. T.C. testified that she sent a text message to Ives about the incident.

T.C. returned to the apartment around 10:00 p.m. that night and saw defendant lying on the sofa and looking toward Ives' bedroom. She noticed that Ives' bedroom door was locked and his belongings were no longer in the bathroom. T.C. asked defendant if Ives had left without leaving his key to the apartment. Defendant replied that he went to Walmart and, when he returned, Ives was gone.

Elena Calix, a co-worker of Ives and defendant, testified that on November 11, 2016, she drove Ives close to his apartment after work. She dropped him off around 6:00 p.m. and did not see him again. She sent him voice messages that night and the next day, but he did not respond.

Doloris Linares, who lived in a neighboring apartment, testified that on November 11, 2016, defendant came home at around 6:00 p.m. and turned on his

loud, air extractor until about 9:00 that night. On Sunday, November 13, 2016, Ms. Linares noticed defendant was cleaning everything with bleach and disinfectant. Defendant told her that he was helping T.C. out because she would be tired after work.

Saidy Garcia, Ives' ex-wife, testified that Ives would usually have their five-year-old daughter on the weekends, but she could not get in touch with him. She went to the apartment complex and Ms. Calix approached her and said Ives' sister had called her trying to locate him. Ms. Garcia stated that they called the police.

Officers from the Kenner Police Department performed two disposition checks at the apartment that day, one around 12:30 p.m. and the other around 6:30 p.m. Defendant gave the officers permission to go into the apartment, and they looked around but did not see any signs of a struggle or blood. They described defendant as calm and cooperative. One of the officers contacted the National Crime Information Center and entered Ives as a missing person.

Lieutenant Jeff Adams testified that on Tuesday, November 15, 2016, Ms. Calix, Ms. Garcia, and Ives' pastor went to the Kenner Police Department for help in locating Ives. After reviewing the missing person report, Lieutenant Adams went to the apartment along with Officer Francisco Alvarenga, Sergeant Bryan Weiter, and Sergeant Adam Schouest. They spoke with defendant, who told them that he did not know where Ives was, that it appeared he had moved out, and that his property was still in his bedroom. Defendant led the officers to Ives' bedroom and opened it, but Lieutenant Adams stayed in the living room. Next to the sofa, Lieutenant Adams noticed a red blood-like substance on the floor. He testified that he began looking at the walls with more attention and noticed what appeared to be blood splatter. Lieutenant Adams decided to get a search warrant for the apartment.

When the search warrant was executed, officers found a blood-like substance on the floors, walls, and several other locations inside the apartment. Sergeant Weiter testified that they found a black, plastic garbage bag containing Ives' personal property in his bedroom closet. Sergeant Weiter described the property in the bag as personal effects someone would be unlikely to leave when they moved out. There was another bag with identifying paperwork in it, such as Ives' passport, state ID, Honduran ID, title paperwork for his car, banking paperwork, and paperwork related to his divorce. Officers later found a blood-like substance in the trunk of defendant's car.

Dr. Marcela Zozaya, an expert in forensic DNA analysis of bodily components, testified that the blood-like substances in the apartment and defendant's trunk tested positive for blood and for Ives' DNA.

T.C. and defendant agreed to go to the Kenner police complex to give statements. Sergeant Weiter testified that T.C. said she was not sure where Ives was and that it looked like he moved out. After she was confronted with a text message, she told them that she was sexually assaulted by defendant on November 11, 2016.

Sergeant Weiter testified that defendant voluntarily gave a statement, which was recorded. Officer Alvarenga, Sergeant Schouest, and Sergeant Weiter conducted the interview with defendant. In the interview, defendant indicated that the last time he saw Ives was at work on Friday afternoon, when Ives was waiting for a ride home. He denied that he ever got into a disagreement with Ives, that anything had happened with T.C. on Friday morning, and that he and Ives fought about him allegedly sexually assaulting T.C. The officers informed defendant that blood was found in the apartment and asked if there was a struggle, but defendant denied anything had happened between him and Ives. He told the officers that Ives was heavier than him and that he would not know how to move the body.

Defendant also stated that he would be unable to clean all the blood by himself. Notably, when the officers spoke to defendant at the apartment and during his interview at the police station, defendant did not say that Ives attacked him, that he had to kill Ives in self-defense, or that his death was an accident.

Major C.J. Destor with the St. John Parish Sheriff's Office received a call on December 29, 2016, from a fisherman on the Reserve canal who said he came upon a human hand floating in the water. Officers met with the fisherman and located a right arm and hand, but did not locate anything further.

Dr. Amanda Krausert, an expert in forensic pathology, prepared an autopsy report on December 30, 2016, regarding a disarticulated right arm, which was later determined to belong to Ives.[3] Dr. Krausert testified that there was an incision wound on the arm that was consistent with a sharp instrument, indicating the person who disarticulated the arm knew what he was doing.[4]

On January 12, 2017, the St. John Parish Sheriff's Office received a call regarding the discovery of body parts near the Reserve canal. Officers responded and found an upper thigh floating in the water. They also located a black bag containing two legs and two feet, another part of a thigh, a bag containing a human torso, and a bag of clothes. Dr. Zozaya testified that these body parts matched Ives' DNA.

Dr. Erin O'Sullivan, an expert in forensic pathology, performed an autopsy on the torso, thighs, lower legs, and feet. She testified that the body parts were disarticulated from the victim but did not show any other evidence of trauma or natural disease. Dr. O'Sullivan testified that to disarticulate the body in this manner, some amount of special skill or knowledge was required.

---

[3] Dr. Zozaya testified she received tissue samples from a right arm, which were consistent with Ives' DNA.

[4] Ms. Calix testified that defendant told her that when he lived in Honduras, he worked as a butcher. However, defendant testified that in Honduras, he was a sailor, not a butcher.

Defendant testified that he and Ives had worked together. After he moved out of the apartment, defendant suggested that Ives move in with T.C. in order to help with the bills. Later, the three of them lived together. Defendant stated he was unaware that T.C. and Ives had a relationship until the police interviewed him, and he did not have any problems with Ives. Defendant also denied sexually assaulting T.C.

Defendant testified that on November 11, 2016, he was washing his face in the bathroom when Ives attacked him from behind with a knife. He testified that Ives said, "you son of a – you mother f***r, I'm going to kill you." Defendant indicated that as they struggled with each other, Ives slashed his own aorta. Defendant tried to stop the bleeding, but there was blood everywhere. He stated that Ives fainted and did not have a pulse.

Upon realizing that Ives was dead, defendant wrapped him in blankets but then realized he could not pick him up. Defendant testified that after removing Ives' clothes, he used the knife Ives attacked him with to cut his limbs off in the living room. When asked if he had been convicted of obstruction of justice for cutting up Ives's body, disposing of his body, and cleaning the scene, defendant replied, "That's what I was told." Defendant admitted that he initially lied to everyone but insisted that he stayed to confront the situation.

## LAW AND DISCUSSION

On appeal, defendant sets forth three assignments of error. In his first assignment of error, defendant argues the trial court erred by admitting the facts pertaining to his obstruction of justice conviction into evidence. He asserts that the evidence of the dismemberment and disposal of Ives' body was not so intertwined with the facts pertaining to the second murder charge that the State could not present its case without it. Defendant further argues that the gory nature of this evidence distracted the jury from the actual issue at trial, which was whether he

acted in self-defense when Ives attacked him. He further claims this evidence was highly prejudicial, had no probative value, and should have been excluded under La. C.E. art. 404(B).

The State responds that this evidence was properly admitted under the *res gestae* doctrine. It contends that the evidence of obstruction of justice formed part of an interrelated series of events, the presentation of which was necessary for narrative momentum and cohesiveness in order for the State to accurately present its case. It further asserts that defendant's actions in the aftermath of the victim's death were highly relevant, provided insight into his state of mind, and were indicative of his guilty knowledge.

On January 13, 2023, the State filed a Notice of Intent to Use Res Gestae Evidence, asserting that it intended to use evidence of defendant's obstruction of justice at his second degree murder trial. On January 18, 2023, defendant filed an Opposition to State's Intention to Introduce "Res Gestae" Evidence and Motion in Limine, asking the court to exclude the evidence of obstruction of justice at trial or limit its use. The State subsequently filed a reply memorandum.

After considering the arguments of counsel at a hearing on January 19, 2023, the trial court found the evidence of obstruction of justice was admissible. It stated, "I think the facts of the obstruction are inextricably intertwined with the fact of the homicide, also allowing the information to be presented to the jury under 404 B." The trial court further stated that the motion in limine included in the defense's opposition was denied. Defendant objected to these rulings.[5]

In Louisiana, the fundamental rule governing the use of evidence of other crimes, wrongs, or acts is that such evidence is not admissible to prove that the accused committed the charged crime because he has committed other such crimes

---

[5] After trial, defense counsel raised the same issue in his Motion for Post-Verdict Judgment of Acquittal and for New Trial filed on February 2, 2023. The motion was addressed at a hearing on February 9, 2023, and denied by the trial court.

23-KA-353          8

in the past. La. C.E. art. 404(B)(1); *State v. Williams*, 09-48 (La. App. 5 Cir. 10/27/09), 28 So.3d 357, 363, *writ denied*, 09-2565 (La. 5/7/10), 34 So.3d 860. Evidence of other crimes, wrongs, or acts committed by the defendant is generally inadmissible because of the "substantial risk of grave prejudice to the defendant." *State v. Ard*, 20-221 (La. App. 5 Cir. 4/28/21), 347 So.3d 1046, 1055.

However, while the State may not admit evidence of other crimes to prove defendant is a person of bad character, evidence of prior crimes may be admitted if the State establishes an independent relevance aside from proving the defendant's criminal character. *State v. Brown*, 17-348 (La. App. 5 Cir. 12/20/17), 235 So.3d 1314, 1323, *writ denied*, 18-158 (La. 11/5/18), 256 So.3d 276, *cert. denied*, -- U.S. --, 139 S.Ct. 2033, 204 L.Ed.2d 233 (2019). Evidence of other crimes, wrongs, or acts is allowed to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct, formerly referred to as *res gestae*, that constitutes an integral part of the act or transaction that is the subject of the present proceeding. La. C.E. art. 404(B)(1); *State v. Joseph*, 16-349 (La. App. 5 Cir. 12/14/16), 208 So.3d 1036, 1046, *writ denied*, 17-77 (La. 4/7/17), 218 So.3d 109.

*Res gestae*/integral act evidence constituting other crimes is deemed admissible, because it is so nearly connected to the charged offense that the State could not accurately present its case without reference to it. *State v. Maize*, 16-575 (La. App. 5 Cir. 6/15/17), 223 So.3d 633, 648, *writ denied*, 17-1265 (La. 4/27/18), 241 So.3d 306. *Res gestae*/integral act evidence in Louisiana acts as a rule of narrative completeness to admit evidence without which the State's case would lose its cohesiveness. *Brown*, 235 So.3d at 1326.

A close proximity in time and location between the charged offense and the other crimes evidence is required to ensure that the evidence of other crimes is not admitted for the purpose of depicting defendant as a bad man or showing he acted

in conformity with the other crime, but rather "to complete the story of the crime for which he is on trial by proving its immediate context of happenings near in time and place." *Maize*, 223 So.3d at 648-49; *State v. Colomb*, 98-2813 (La. 10/1/99), 747 So.2d 1074, 1076.

In addition, the probative value of the other crimes evidence must outweigh its prejudicial effect. La. C.E. art. 403. *Maize*, *supra*. Any inculpatory evidence is "prejudicial" to a defendant, especially when it is "probative" to a high degree. *State v. Rodgers*, 16-14 (La. App. 5 Cir. 10/26/16), 202 So.3d 1189, 1201, *writs denied*, 16-2189 (La. 9/15/17), 225 So.3d 479, and 16-2093 (La. 1/29/18), 235 So.3d 1104. However, this prejudice limits the introduction of probative evidence of prior misconduct only when it is unduly and unfairly prejudicial. *Id.* The term "unfair prejudice," as to a criminal defendant, speaks to the capacity of some relevant evidence to lure the fact-finder into declaring guilt on a ground different from the proof specific to the offense charged. *State v. Frickey*, 22-261 (La. App. 5 Cir. 3/1/23), 360 So.3d 19, 50, *writ denied*, 23-468 (La. 11/8/23), 373 So.3d 59.

The burden is on the defendant to show that he was prejudiced by the admission of other crimes evidence. *State v. Gatson*, 21-156 (La. App. 5 Cir. 12/29/21), 334 So.3d 1021, 1038. Absent an abuse of discretion, a trial court's ruling on the admissibility of evidence pursuant to La. C.E. art. 404(B)(1) will not be disturbed. *Id.*

In *State v. Taylor*, 01-1638 (La. 1/14/03), 838 So.2d 729, 741, *cert. denied*, 540 U.S. 1103, 124 S.Ct. 1036, 157 L.Ed.2d 886 (2004), the defendant was convicted of first degree murder. On appeal, he challenged the admissibility of evidence concerning his participation in other crimes committed after the charged offense and before his arrest several days later. *Id.* at 740-41. In the defendant's view, evidence of the crimes occurring after the offense did not constitute an integral part of the crime charged and did not fall under any recognized exception

set forth in La. C.E. art. 404(B)(1).  The Louisiana Supreme Court found that the evidence was clearly relevant for purposes other than simply proving the criminal disposition of the defendant.  For instance, the events following the murder provided law enforcement with the first break in the investigation.  Consequently, the Supreme Court concluded that the State could not have logically presented its case without telling the jury why the suspicions developed, and therefore, the evidence was admissible under the *res gestae* doctrine.  *Id*. at 743.

In the present case, the facts surrounding the obstruction of justice charge were integral to show the progression of the investigation from a missing person case to a homicide.  These facts were also necessary to explain the condition of the body parts recovered by the police.  The officers found blood in the apartment while searching for a missing person, and defendant initially denied knowing what happened to the victim or where he was.  Later, defendant testified the knife that killed Ives was the same knife used immediately after to dismember the body.  The evidence of the obstruction of justice was so nearly connected to the charged offense that the State could not accurately present its case without reference to it.

Additionally, although the obstruction of justice evidence was prejudicial, it did not outweigh its probative value.  When a defendant in a homicide prosecution asserts a claim of self-defense, the burden is on the State to prove beyond a reasonable doubt that the defendant did not act in self-defense.  *State v. Sly*, 23-60 (La. App. 5 Cir. 11/2/23), 376 So.3d 1047, 1073, *writ denied*, 23-1588 (La. 4/23/24), --- So.3d ---, 2024 WL 1737007.  Evidence of flight, concealment, or attempt to avoid apprehension is relevant and admissible to prove consciousness of guilt from which the trier of fact may infer guilt.  *State v. Davis*, 18-485 (La. App. 5 Cir. 4/10/19), 269 So.3d 1123, 1132, *writ denied*, 19-716 (La. 11/12/19), 282 So.3d 229.

In this case, defendant asserted that he was acting in self-defense when Ives accidentally cut his own throat. The evidence of defendant's actions in concealing and disposing of Ives' body was relevant to show defendant's guilty knowledge and/or specific intent, and to rebut defendant's defense that he was acting in self-defense. *See State v. Huls*, 95-541 (La. App. 1 Cir. 5/29/96), 676 So.2d 160, 177, *writ denied*, 96-1734 (La. 1/6/97), 685 So.2d 126, in which the First Circuit found that the defendant's activities after he murdered his ex-wife, such as concealing her body and disposing of the murder weapon, were consistent with a finding of specific intent to kill and guilty knowledge. *See also State v. Richards*, 06-1553 (La. App. 3 Cir. 5/2/07), 956 So.2d 160, 171, *writ denied*, 07-1129 (La. 12/14/07), 970 So.2d 529, in which the Third Circuit recognized that a defendant's concealment of the victim's body is inconsistent with a self-defense argument. *See also State v. Murray*, 36,137 (La. App. 2 Cir. 8/29/02), 827 So.2d 488, *writ denied*, 02-2634 (La. 9/5/03), 852 So.2d 1020; and *State v. Paterno*, 01-2585 (La. App. 1 Cir. 6/21/02), 822 So.2d 141, 148.

Based on our finding that the other crimes evidence constituted an integral part of the murder investigation and that this evidence was relevant to counter defendant's claim of self-defense, we find no error in the trial court's determination that the evidence of obstruction of justice was admissible at defendant's trial for second degree murder. Accordingly, we find no merit in defendant's first assignment of error, and we affirm his conviction for second degree murder.

Defendant's second and third assignments of error pertain to his sentence. In his second assignment of error, defendant asserts the trial court erred when it imposed an excessive sentence by ordering his life sentence for second degree murder to be served consecutively to his forty-year sentence for obstruction of justice. In his third assignment of error, defendant contends that the trial court

failed to observe the twenty-four-hour delay required by La. C.Cr.P. art. 873 after denying his motion for new trial, and he did not waive this time delay prior to sentencing. He asserts his sentence for second degree murder was illegally imposed and must be vacated. Considering these arguments, we first address the third assignment of error.

La. C.Cr.P. art. 873 provides that "[i]f a motion for a new trial, or in arrest of judgment, is filed, sentence shall not be imposed until at least twenty-four hours after the motion is overruled. If the defendant expressly waives a delay provided for in this article or pleads guilty, sentence may be imposed immediately."

On February 4, 2023, defendant filed a Motion for Post-Verdict Judgment of Acquittal and for New Trial. At a hearing on February 9, 2023, the trial court denied the motion. Following victim impact statements presented at this hearing, the trial court sentenced defendant to life imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence, to run consecutively with his forty-year sentence for obstruction of justice and a six-month sentence imposed for contempt.

Absent a showing of prejudice, when a defendant does not waive the delay afforded in La. C.Cr.P. art. 873, and does not challenge the penalty imposed, the error may be harmless. *State v. Wilson*, 99-105 (La. App. 5 Cir. 7/27/99), 742 So.2d 957, 959, *writ denied,* 99-2583 (La. 2/11/00), 754 So.2d 935. However, when a defendant challenges the penalty imposed and the sentence is not mandatory, the failure to observe the twenty-four-hour delay mandated in La. C.Cr.P. art. 873 cannot be considered harmless error. *State v. Bienvenu*, 14-541 (La. App. 5 Cir. 12/16/14), 167 So.3d 63, 70, *writ denied*, 15-98 (La. 11/20/15), 180 So.3d 314; *State v. Chester*, 19-363 (La. App. 5 Cir. 2/3/21), 314 So.3d 914, 989, *writ denied*, 21-350 (La. 6/8/21), 317 So.3d 321. Generally, when a defendant challenges a non-mandatory sentence and the delay is not waived, the

defendant's sentence must be vacated and the matter remanded for resentencing. *State v. Bibbins*, 13-875 (La. App. 5 Cir. 4/9/14), 140 So.3d 153, 169, *writs denied*, 14-994 (La. 12/8/14), 153 So.3d 439, and 14-1015 (La. 12/8/14), 153 So.3d 440.

In the present case, defendant did not waive the twenty-four-hour sentencing delay, and he challenges both his sentence and the failure to observe the delay in this appeal. Although defendant received a mandatory life sentence for the second degree murder conviction pursuant to La. R.S. 14:30.1, the consecutive nature of his sentence was not mandatory. Accordingly, given these circumstances, we vacate defendant's sentence and remand the matter for resentencing.

Considering our decision to vacate defendant's sentence and remand for resentencing, we find that defendant's second assignment of error, challenging the consecutive nature of his sentence as excessive, is moot.

## ERRORS PATENT

The record was reviewed for errors patent according to La. C.Cr.P. art. 920; *State v. Oliveaux*, 312 So.2d 337 (La. 1975); and *State v. Weiland*, 556 So.2d 175 (La. App. 5 Cir. 1990). No errors requiring corrective action were noted.

## DECREE

For the foregoing reasons, we affirm defendant's conviction for second degree murder, vacate his sentence, and remand to the trial court for resentencing.

### CONVICTION AFFIRMED; SENTENCE VACATED; REMANDED FOR RESENTENCING

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **MAY 22, 2024** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 23-KA-353

### E-NOTIFIED

24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE ELLEN SHIRER KOVACH (DISTRICT JUDGE)
ANDREA F. LONG (APPELLEE)          THOMAS J. BUTLER (APPELLEE)

### MAILED

JANE L. BEEBE (APPELLANT)              HONORABLE PAUL D. CONNICK, JR.
ATTORNEY AT LAW                         (APPELLEE)
LOUISIANA APPELLATE PROJECT             DISTRICT ATTORNEY
POST OFFICE BOX 463                     KELLIE M. RISH (APPELLEE)
ADDIS, LA 70710                         RICHARD L. OLIVIER (APPELLEE)
                                        ASSISTANT DISTRICT ATTORNEYS
                                        TWENTY-FOURTH JUDICIAL DISTRICT
                                        200 DERBIGNY STREET
                                        GRETNA, LA 70053